Isidoro Rivera González, querellante y apelante, *v.* Andrés A. Lugo, Alcaide de la Cárcel de Distrito de San Juan, querellado y apelado.

Núm. 7582.—*Sometido:* Febrero 21, 1938. *Resuelto:* Julio 28, 1938.

*Arturo O'Neill,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

El peticionario en este recurso de hábeas corpus había sido convicto por una corte municipal de infringir una orden de la Comisión de Servicio Público, cuya parte dispositiva, según fué enmendada en marzo 16, 1935, lee en parte como sigue:

"Se ordena además, y por la presente queda prohibido, el que ningún vehículo de motor que no haya sido previamente autorizado por la Comisión, actúe, sirva, funcione u opere como porteador público en el transporte de pasajeros por asiento, brindando, ofreciendo, prestando o rindiendo su servicio al público en general mediante paga y por asiento entre puntos incluídos dentro de las rutas servidas por la White Star Bus Line, Inc."

La corte de distrito expidió el auto y luego de celebrar una vista, declaró sin lugar la petición. El peticionario apela. Alega que la corte de distrito cometió error al sostener la validez de la orden y al sostener la validez de la sección 95 de la ley de servicio público según fué enmendada en 1927 (segunda sesión extraordinaria, págs. 399–407).

La White Star Bus Line, Inc. es dueña de una franquicia que le da autoridad exclusiva para establecer, mantener y explotar un servicio de guaguas mediante paga, para el transporte de pasajeros entre y dentro de las municipalidades de San Juan y Río Piedras y puntos intermedios. La franquicia dispone que todas las rutas del servicio autorizado por la franquicia serán fijadas por la Comisión de Servicio Público luego de celebrarse una vista, en la cual

se dará a la concesionaria oportunidad de ser oída. Provee además que la autoridad exclusiva concedida se aplicará al transporte local dentro y entre los municipios de San Juan y Río Piedras, a través, en o fuera de los referidos municipios de San Juan y Río Piedras.

▬ La primera contención del apelante bajo el primer señalamiento parece ser que la orden de la Comisión de Servicio Público es nula toda vez que la prohibición no se limita a ómnibus (guaguas). El monopolio de transporte de pasajeros en guaguas fué, según insiste el apelante, lo que la Comisión tuvo en mente al conceder la franquicia. En apoyo de esta teoría el apelante nos cita el caso de *Santiago* v. *Comisión de Servicio Público, et al.*, 37 D.P.R. 501, 516, donde esta corte dijo:

"La franquicia de que se trata concede a la White Star el derecho exclusivo de transportar pasajeros en ómnibus entre San Juan, sus barrios y Río Piedras, usando como es consiguiente las calles y caminos públicos, mediante ciertas condiciones y sujeta al control de la Comisión."

Sin embargo, en dicho caso el competidor de la White Star Line era dueño de una guagua de veintidós pasajeros. La cuestión relativa a si el factor exclusivo de la franquicia se limitaba al transporte en guaguas, no estaba envuelta ni estuvo en la mente de los jueces que constituían el tribunal. No quisimos decir ni dijimos que el transporte autorizado por la franquicia estaba limitado a esa clase de vehículos. La franquicia no usa la palabra ómnibus, sino que, conforme hemos demostrado, concede autoridad exclusiva "para establecer, mantener y operar un servicio de guaguas mediante paga para el transporte de pasajeros entre y dentro de las municipalidades de San Juan y Río Piedras y puntos intermedios."

En 42 Corpus Juris 611, sec. 7, se dice:

"Ómnibus o guagua puede ser definido como cualquier automóvil o vehículo sin carriles dedicado al negocio de transportar pasajeros

mediante paga y corrido o funcionado por determinada ruta, hacia un punto específico o dentro de determinado territorio.''

La orden de la Comisión quizá pudo haber sido concebida en términos distintos, tal vez pudo redactársele en lenguaje más afortunado. Lógicamente interpretada no prohibe el uso de ningún vehículo de motor al no ser éste utilizado como guagua por las rutas fijas de la White Star Line. Un taxímetro o un carro de turismo—mientras es utilizado como tal taxímetro o automóvil de turismo—no es una guagua. Cuando un taxímetro o automóvil de turismo es corrido o explotado por determinada ruta y por ese servicio el dueño o conductor cobra de cada pasajero cierta suma por asiento, entonces el vehículo deja de ser un taxímetro o automóvil de turismo y se convierte en un ómnibus. No estamos preparados para decir que la orden de la Comisión era *ultra vires* y nula, meramente porque prohibía el uso no autorizado de un carro de turismo o de un taxímetro o de cualquier otro vehículo de motor, como porteador público, por las rutas fijadas para la White Star Line, a determinado precio por asiento que debería ser pagado por cada pasajero recogido en cualquier punto de dichas rutas.

 Otra contención bajo el primer señalamiento es que la Comisión de Servicio Público no puede crear o definir un delito. En apoyo de esta contención el apelante cita: Artículo 2 de la Ley Orgánica; Artículo 5 del Código Penal; 16 Corpus Juris 64, sec. 22; *Ex Parte Rivera*, 34 D.P.R. 773; *Pueblo* v. *Paratze*, 22 D.P.R. 38, 40; *Pueblo* v. *Terrasa*, 28 D.P.R. 11, 13; *Ex Parte Rivera*, 35 D.P.R. 285; Nota 58(*a*) y casos citados en 16 C. J., supra; 6 R.C.L. 435–437; 16 C. J. 62, sec. 10; 6 R.C.L. 164, 165, sec. 165–166; Id. 177, 178, sec. 178; *Morril* v. *Jones*, 106 U. S. 466; *U. S.* v. *Eaton*, 144 U. S. 677; *U. S.* v. *Symonds*, 120 U. S. 46; *Todd* v. *U. S.*, 278; *U. S.* v. *Grimaud*, 220 U. S. 506; *U. S.* v. *Keitel*, 157 F. 396; *U. S.* v. *Sandefuhr*, 145 F. 49; *U. S.* v. *Maid*, 116 F. 650; *Hampton & Co.* v. *U. S.*, 276 U. S., 394, 408.

La médula del argumento es ésta:

El peticionario no fué acusado de infringir ninguna ley aprobada por la Asamblea Legislativa de Puerto Rico; su arresto y convicción se basaron en una orden de la Comisión de Servicio Público de Puerto Rico; la comisión no tiene facultad para crear o definir un delito en Puerto Rico; si el acto en cuestión no estaba prohibido por la ley, el peticionario no había cometido delito alguno; su arresto, acusación y convicción fueron contrarios a las disposiciones del Código Penal y estaban en pugna con el principio fundamental que protege al ciudadano de ser procesado y castigado por la Comisión de un acto no prohibido expresamente por la ley; el debido procedimiento de ley presupone la existencia de un estatuto que ha sido violado; la Comisión ha creado un nuevo delito; para que un acto sea un delito es esencial el ejercicio de un poder legislativo que no puede ser delegado; la Comisión no puede enmendar ninguna ley ni adicionando sus disposiciones ni suprimiendo ninguno de sus términos; una ley debe ser tan completa en todos sus términos y disposiciones cuando abandona la rama legislativa del gobierno, que nada ha de dejarse al criterio de los lectores o a cualquier otro subalterno o delegado del poder legislativo; cuando un estatuto resulta incompleto como pieza de legislación y autoriza a un cuerpo ejecutivo que decida qué ha de constituir una infracción de la ley y qué no, se declarará que el mismo es inconstitucional por tratar de hacer una indebida delegación de poderes legislativos...; lo que las ramas ejecutivas del gobierno o sus diferentes departamentos pueden hacer es promulgar reglas o reglamentos en armonía con los preceptos legales; no pueden decretar nada que se salga de los objetivos del estatuto; la ley de servicio público no prohibe la competencia, y la Comisión, al prohibir la competencia con la White Star Line, fué más allá de los fines de la ley; legislaba, y al fijar como penalidad por la infracción de la orden la penalidad dispuesta para otro fin por la sección 95 de la ley, erró desde el punto de vista del derecho constitucional así como al interpretar la ley.

Una discusión adecuada de todas estas cuestiones y de todas las autoridades citadas por el apelante, haría que esta opinión resultara excesivamente larga.

*Panama Refining Co.* v. *Ryan,* 293 U. S. 388, es para el apelante tal vez un caso más fuerte que cualquiera de las autoridades citadas por él. Véase también *Schechter Corp.* v. *U. S.,* 295 U. S. 495.

Empero, en el curso de la opinión emitida en el caso de *Panama Refining Company,* la corte dijo, a la página 421:

". . . Es indudable que con frecuencia ha de adoptarse legislación para condiciones complejas que envuelven un número de detalles con que la legislatura nacional no puede intervenir directamente. La Constitución nunca ha sido interpretada en el sentido de que niega al Congreso los recursos necesarios de flexibilidad y practicabilidad que le permitan ejercer sus funciones al sentar principios y establecer normas, mientras que deja a determinadas dependencias la preparación y adaptación de reglamentos subordinados dentro de determinados límites; y la determinación de hechos a que ha de aplicarse tal norma conforme la misma ha sido declarada por la Asamblea Legislativa. Sin tener capacidad para conceder una autorización de esa índole, tendríamos la anomalía de un poder legislativo que en muchas circunstancias que requieran su ejercicio, resultaría enteramente fútil. Pero el reconocimiento que constantemente se ha hecho de la necesidad y validez de tales disposiciones, y el inmenso campo de autoridad administrativa que se ha desarrollado por medio de ellas, no puede permitirse que oscurezcan las limitaciones de la autoridad para delegar, si es que ha de sostenerse nuestro sistema constitucional."

Conforme indicó el Juez Asociado Sr. Cardozo en su opinión disidente, "la opinión prevaleciente" admitió que una norma (*standard*) hubiera sido "tan eficaz como si se le hubiese incluído en la sección 9(*c*)" de la Ley Nacional de Reconstrucción Industrial, "mediante razonable implicación, tal cual si se le hubiese incluído allí textualmente." En la opinión de la mayoría y a la página 416, la corte, luego de escudriñar la sección 9(*c*), dijo:

"Examinamos el contexto para determinar si éste ofrece una declaración de la política o norma de acción que pueda considerarse como que se refiere al asunto tratado en la sección 9(*c*) y que implica así aquello que en ella no se expresa."

La concesión general de la autoridad legislativa, contenida en la sección 32 de la primera Carta Orgánica, fué limitada por el siguiente *disponiéndose:*

". . . *Disponiéndose, sin embargo,* que toda concesión de franquicias, derechos y privilegios, o concesión de carácter público o

cuasi público, será otorgada por el Consejo, Ejecutivo, con la aprobación del Gobernador, y toda franquicia concedida en Puerto Rico será comunicada al Congreso, el cual se reserva por la presente la facultad de anularla o modificarla.''

El artículo 38 de la segunda Carta Orgánica, provee:

''Toda franquicia, derecho, privilegio y concesión de carácter público o cuasi público, será otorgada por una Comisión de Servicio Público.... Dicha Comisión queda facultada para desempeñar, y se le ordena que desempeñe, todas las funciones ejecutivas relacionadas con las corporaciones de servicio público que hasta ahora se han conferido por la ley al Consejo Ejecutivo, y aquellos deberes y funciones adicionales que se confieran a dicha Comisión por la Asamblea Legislativa.''

Los miembros de esta Comisión tienen que ser nombrados por el Gobernador con el consejo y consentimiento del Senado. De conformidad con los términos de ese artículo ''dicha Comisión queda facultada para desempeñar, y se le ordena que desempeñe, todas las funciones ejecutivas relacionadas con las corporaciones de servicio público que hasta ahora se han conferido por la ley al Consejo Ejecutivo, y aquellos deberes y funciones adicionales que se confieran a dicha Comisión por la Asamblea Legislativa.'' El párrafo final lee así:

''La Asamblea Legislativa de Puerto Rico queda autorizada por la presente para decretar leyes relativas a la reglamentación de los precios, tarifas y servicios de todos los porteadores públicos en Puerto Rico, y la Comisión de Servicio Público creada por esta ley tendrá facultad para poner en ejecución las leyes de ese carácter mediante reglamentación adecuada.''

En 1917, la Asamblea Legislativa Insular aprobó una ley conocida con el nombre de ''Ley de Servicio Público de Puerto Rico'' titulada: ''Ley definiendo las compañías de servicio público y proveyendo lo necesario para su reglamentación; prescribiendo, definiendo, reglamentando y limitando sus derechos, facultades y deberes; prescribiendo y definiendo las facultades y deberes de la Comisión de Ser-

vicio Público, y los de sus funcionarios; prescribiendo y reglamentando la práctica y el procedimiento ante dicha Comisión y en apelación, y para otros fines.'' (Leyes de ese año, pág. 433, vol. 2.)

El artículo 2 reza, en parte, así:

''Son compañías de servicio público, a los efectos de esta ley, las personas naturales o jurídicas que se dediquen en Puerto Rico a cualesquiera de los fines o negocios siguientes:

''(a) Transporte de personas o carga utilizando en todo o en parte las vías marítimas, fluviales o terrestres.

'' . . . . . . .

''La frase 'porteador público', según se usa en esta ley, incluye toda persona natural o jurídica dedicada por lucro al transporte de pasajeros, o carga, o de ambas cosas en Puerto Rico, por cualquier medio de locomoción.''

El artículo 3 impone a toda compañía de servicio público el deber de:

''(a) *Servicio y facilidades de seguridad.*—Prestar y mantener aquel servicio, incluyendo facilidades, que en todo sentido fuere justo, seguro, razonablemente adecuado, y prácticamente suficiente para el acomodo y seguridad de sus favorecedores, empleados, y del público, y *de conformidad con los reglamentos u órdenes razonables que la Comisión dictare.*

'' . . . . . . .

''(1) *Deberes específicos de porteadores públicos respecto a sus facilidades.*—Si fuese una compañía de ferrocarril o compañía de ferrocarril urbano, u otro porteador público, deberá suministrar un número suficiente de trenes, carros, vehículos, embarcaciones u otras facilidades, debiendo administrarlo y explotarlo con la fuerza motriz que pueda razonablemente exigirse para el transporte de todos los pasajeros o carga que procurare dicho transporte o se le ofrecieren; y despachar y explotar sus predichos trenes, carros, vehículos, embarcaciones u otras facilidades con la frecuencia suficiente a intervalos propios y razonables y entre aquellas estaciones o puntos que *la Comisión, según la conveniencia y seguridad general del público, requiriere; y, cuando la Comisión lo exigiere,* cambiar el itinerario para la explotación de sus trenes, carros, vehículos, embarcaciones u otras facilidades; y en general hacer cualesquiera otros arreglos y mejoras en su servicio *que la Comisión determinare y requiriere;*

Disponiéndose, que cuando algún tren, carro, vehículo o embarcación sufriere alguna avería, será inmediatamente retirado del servicio y suplido por otro que esté en buenas condiciones.

" . . . . . . .

"(y) *Obedecer las órdenes y reglas de la Comisión.*—Deberá observar y obedecer todas y especialmente las órdenes y reglamentos legales que se dictaren o hicieren por la Comisión en el ejercicio de las facultades que le están conferidas por esta ley."

El artículo 9 dispone que será ilegal por parte de cualquier porteador público.:

"(a) *Recorrido largo y corto.*—Cobrar o recibir una compensación mayor, en junto, por el transporte de pasajeros o propiedad de la misma clase por una distancia más corta que por una más larga sobre la misma línea en la misma dirección, estando incluída la distancia más corta en la más larga; y *a menos que la Comisión especialmente lo autorizare,* cargar una compensación mayor, como precio de uno a otro punto, que la totalidad de los precios intermedios, pero esto no se interpretará en el sentido de autorizar a cualquier porteador público para cobrar y recibir igual compensación por una distancia más corta que por otra más larga. Nada de lo contenido en este artículo prohibirá que los porteadores públicos establezcan sistemas de precios razonables por zonas."

Los artículos 14, 24 (ambos en parte), 25, 48 según fué enmendado en 1927 (en parte), 49, 50, 52 (en parte), 53, 67 (en parte), 92 (en parte) y 95 según fué enmendado en 1927 (en parte), proveen lo siguiente:

Artículo 14:

"La Comisión de Servicio Público creada por la Ley Orgánica desempeñará todas las funciones ejecutivas relativas a compañías de servicio público que hasta ahora han sido ejercitadas por el extinguido Consejo Ejecutivo y concederá toda franquicia, derecho, poder y privilegio de naturaleza pública o cuasi pública, según se dispone en aquella ley y en la presente. *Tendrá también la facultad de reglamentar a toda compañía de servicio público según se especifica en aquélla y en esta ley y para llevar a cabo las disposiciones de ésta,* y se conocerá con el nombre de 'Comisión de Servicio Público de Puerto Rico.' "

Artículo 24:

"*Poderes Generales.*—La Comisión tendrá poder general administrativo y autoridad según se dispone en la Ley Orgánica, y en esta ley, para desempeñar todas las funciones ejecutivas relativas a compañías de servicio público que hasta ahora estaban conferidas por la ley al extinguido Consejo Ejecutivo; para hacer toda concesión de franquicias, derechos y privilegios, de carácter público o cuasi público; para inspeccionar y reglamentar todas las compañías de servicio público que hicieren negocios en Puerto Rico, y para dar cumplimiento a las disposiciones de esta ley.

"Dicho poder y autoridad incluirá el poder de inquirir, oír, determinar y reglamentar el servicio, precios, pasajes, o cargas de cualquiera y toda compañía de servicio público, incluyendo precios individuales y mancomunados; .... la realización de reparaciones, alteraciones, y mejoras en el servicio que razonablemente fueren necesarias para la comodidad o seguridad de sus favorecedores, empleados y para el público; la concesión de trasbordos de una parte del sistema del mismo porteador público a otra; la distribución justa y equitativa de trenes, carros, vehículos y fuerza motriz, u otras facilidades, de todos los porteadores públicos; ... *la seguridad, suficiencia y lo adecuado de las facilidades, planta y equipo para la explotación de su negocio por dichas compañías de servicio público; ....*"

Artículo 25:

"*Reglamentación de servicios, facilidades, reglas, reglamentos y prácticas.*—Siempre que la Comisión determinare, después de audiencias celebradas de oficio, o en virtud de querella, según más adelante se dispone, que el servicio, facilidades, reglas y reglamentos, prácticas o clasificaciones de cualquier compañía de servicio público en relación con sus deberes públicos son inseguros, inadecuados, insuficientes, injustos o irrazonables, la Comisión determinará y especificará en orden por escrito, que deberá dictarse y archivarse según se dispone más adelante, el servicio, facilidades, reglas, reglamentos o prácticas justas, razonables, seguros, adecuados y suficientes, que deberán ser puestos en vigor, observados, prestados o suministrados en el desempeño de sus deberes públicos por dicha compañía; y, previa notificación, será el deber de toda compañía de servicio público, a la cual afectare dicha orden, observarla y obedecerla."

Artículo 48:

"*Reglas y reglamentos.—Penalidad por su infracción.—Reserva de informes.*—La Comisión podrá dictar reglas y reglamentos no

incongruentes con la ley, que fueren necesarios o propios para el ejercicio de sus facultades o para el desempeño de sus deberes. Dichas reglas y reglamentos serán sometidos al Gobernador de Puerto Rico, quien tendrá la obligación de aprobar o desaprobar los mismos. Una vez aprobados por el Gobernador, las referidas reglas y reglamentos tendrán fuerza y efecto de ley, y cualquier persona que, a sabiendas, infringiese los mismos, o que, a sabiendas, procurare, ayudare o indujere a tal infracción, será culpable de delito menos grave, y convicta que fuere por un tribunal competente, será castigada con multa no mayor de cien (100) dólares; *Disponiéndose,* que las cortes municipales de la Isla tendrán jurisdicción en estos casos.''

Artículo 49:

*''Poder para hacer cumplir la ley.*—En adición a los precedentes poderes expresamente enumerados, la comisión tendrá autoridad, y será su deber, hacer cumplir, ejecutar y llevar a cabo, por medio de sus órdenes, providencias, reglamentos o de otro modo, todas y especialmente las disposiciones de los capítulos segundo y tercero de esta Ley, referentes, respectivamente, a los deberes y limitaciones, y a la creación de las facultades y limitaciones de facultades de las compañías de servicio público; y todas y especialmente las demás disposiciones de esta ley y la completa intención de las mismas; y tendrá el poder de rescindir o modificar dichas órdenes, providencias o reglamentos.''

Artículo 50:

*''La enumeración de poderes no excluirá otros.*—La enumeración de los poderes de la Comisión, que se hace en esta ley no implicará limitación de sus facultades de acuerdo con la misma.''

Artículo 52:

*''Concesiones que se hicieren.*—La Comisión tendrá poder para otorgar franquicias, derechos, privilegios o concesiones para fines públicos o cuasi públicos *incluyendo el derecho de usar* o cruzar *carreteras, caminos o cauces de agua públicos; ....*''

Artículo 53:

*''Condiciones y clases de concesiones.*—La Comisión tendrá poder para determinar los términos y condiciones de las franquicias, derechos, privilegios o concesiones, que otorgare para determinar los casos en que deberán otorgarse; y estará facultada para exigir un canon periódico por el ejercicio de los mismos.''

Artículo 67:

"*Querellas ante la Comisión.*—Cualquier persona, individual o jurídica, que se quejare de cualquier cosa hecha o próxima a hacerse, omitida o próxima a omitirse por cualquier compañía de servicio público con infracción de cualesquiera de los requisitos o disposiciones de esta ley o de *cualquier determinación, decisión . u orden legal de la Comisión,* podrá dirigirse a la Comisión, mediante solicitud. . . . una copia de ésta se enviará inmediatamente bajo pliego certificado, por la Comisión, a cualquier oficial o agente de la compañía de servicio público contra la cual se presentare la querella, acompañada de una notificación de la Comisión ordenando a la compañía querellada, que satisfaga la querella o que la conteste por escrito, dentro del tiempo razonable que la Comisión especificare en dicha notificación."

Artículo 92:

"*Cumplimiento de órdenes.*—Toda compañía de servicio público, sus oficiales, agentes y empleados a quienes afectare cualquier orden final de la Comisión. . . . obedecerán, observarán y cumplirán dicha orden y los términos y condiciones de la misma mientras estuviere y continuare en vigor."

Artículo 95:

"*Pena por infracción de la ley.*—Si cualquier persona o compañía de servicio público. . . dejare, omitiere, desatendiere o se negare a obedecer, observar y cumplir cualquier disposición, requisito, determinación u orden final que hubiere dictado la comisión. . . dicha compañía de servicio público, incurrirá, convicta que fuere, por una corte de jurisdicción competente, en multa no menor de cincuenta (50) dólares ni mayor de mil (1,000) dólares por dicha infracción, omisión, falta, desatención o negativa."

No ignoramos el hecho de que no existe un estatuto que prohiba que se haga una competencia no autorizada a la cesionaria de una franquicia exclusiva. La Asamblea Legislativa no ha conferido expresamente a la Comisión de Servicio Público la facultad de prohibir tal competencia. No hay una declaración específica relativa a la política legislativa sobre tal competencia. De haber alguna norma estatutaria fija, algunas reglas fundamentales o criterios que

sirvan de guía a la Comisión, éstos deben hallarse en disposiciones que no tratan directamente, con la cuestión de tal competencia. De poderse echar a un lado por completo otras consideraciones, sería bastante fácil decir que la Asamblea Legislativa no ha establecido ninguna pauta a este respecto; que no ha establecido ninguna norma ni promulgado ningunas reglas fundamentales que sirvan de guía a la Comisión; que no existe cuestión de delegación inconstitucional ni traspaso alguno de funciones legislativas esenciales, toda vez que no ha habido delegación de autoridad sobre la cuestión de competencia no autorizada. Debe llegarse a esta conclusión tan sólo al no haber una puerta de escape y aun entonces con gran vacilación.

El concesionario de una franquicia exclusiva de ordinario acepta algunas condiciones onerosas especificadas en la propia franquicia. Asume las obligaciones impuéstasle por la Ley de Servicio Público y aquéllas que pudiesen ser fijadas sobre él por la Comisión de Servicio Público bajo dicha ley. Implica un gran caudal de responsabilidad. No puede evadir esta responsabilidad. Tiene algunos derechos que no pueden ser ignorados.

En 12 Corpus Juris 839, 841, sec. 323, hallamos lo siguiente:

". . . . La dificultad consiste, no en determinar el principio regulador, sino en aplicarlo a casos concretos. Con la complejidad creciente de la vida moderna, la multiplicación de los objetos de la reglamentación gubernamental y la dificultad aumentada de hacer cumplir las leyes, hay una tendencia que crece constantemente hacia la delegación de mayores poderes por la Asamblea Legislativa y hacia la aprobación de tal práctica por las cortes..."

Cualquiera que sea la tendencia general de la opinión judicial, la Comisión de Servicio Público moderna es un ejemplo típico de aquellas instrumentalidades preferidas a quienes puede dejarse "la preparación y adaptación de reglamentos subordinados dentro de determinados límites y la determinación de hechos a que ha de aplicarse tal norma

conforme la misma ha sido declarada por la Asamblea Legislativa.'' La eficiencia de tal Comisión depende grandemente de la actitud de las cortes. Tal eficiencia no debe ser menoscabada o destruída, si es posible evitar ese resultado. Ésta es una cuestión que afecta el interés, conveniencia y seguridad públicos, de tal manera que ella no debe ser pasada por alto ni menospreciada.

La Comisión de Servicio Público desempeña ''todas las funciones ejecutivas relacionadas con corporaciones de servicio público'' que habían sido otorgadas anteriormente por la ley al Consejo Ejecutivo. Ejerce tales otros poderes y funciones que le han sido conferidos por la Legislatura Insular. Su poder de conceder franquicias es ilimitado. El poder de conceder una franquicia exclusiva que imponga al concesionario la obligación de operar sobre rutas fijas a ser determinadas por la Comisión de Servicio Público y que lo someta a todas las obligaciones y deberes impuestos a una compañía de servicio público por la Ley de Servicio Público y a todos los poderes conferidos por la Comisión por tal ley, conlleva, a nuestro juicio, el poder incidental de proteger al concesionario y al público en general de una competencia desastrosa y no autorizada por las rutas en las cuales los vehículos del concesionario están obligados a transitar y de las cuales no se les permite desviarse.

La Ley de Servicio Público en su totalidad revela una política legislativa definida de supervisión, reglamentación y control sobre las compañías de servicio público y sobre los porteadores públicos. Reglamenta estas compañías y porteadores hasta cierto punto, establece determinadas normas, criterios y reglas que servirán de guía a la Comisión de Servicio Público y por y mediante sus propias órdenes, reglas y reglamentos confiere además a la Comisión la facultad de reglamentar, supervisar y controlar tales compañías y porteadores.

El artículo 52, conforme hemos visto, dispone expresamente que ''la Comisión tendrá poder para otorgar fran-

quicias, derechos, privilegios o concesiones para fines públicos o cuasi públicos incluyendo el derecho de usar o cruzar carreteras y caminos.'' No fija limitación o restricción a este poder. La facultad de otorgar a una compañía de servicio público el derecho a utilizar una vía pública como única ruta por la cual se le permite explotar su negocio, incluye la facultad de prohibir el uso no autorizado de la misma vía por otras compañías de servicio público dedicadas al mismo negocio con el propósito de explotar el mismo. El resolver lo contrario haría que las disposiciones del artículo 38 de la Carta Orgánica y los artículos 52 y 53 de la Ley de Servicio Público resultaran nulas hasta el grado que esas disposiciones otorgan a la Comisión de Servicio Público autoridad para conceder una franquicia exclusiva; reduciría la capacidad adquisitiva de la concesionaria de tal franquicia; menoscabaría la eficiencia de sus servicios, pondría en peligro la seguridad pública, aumentaría el costo del transporte a expensas del público y a costa de aquella parte del público que puede haber invertido dinero en los bonos y acciones expedidos por la concesionaria para poder realizar su negocio; tendería a destruir la habilidad de la concesionaria para hacer frente a las obligaciones impuéstasle por la franquicia y por los términos y condiciones de la Ley de Servicio Público; haría prácticamente inservible el factor monopolístico de la franquicia; y equivaldría a una penalidad e injusticia innecesarias, por no decir a un fraude, para con aquéllos que hubieran invertido su dinero en una empresa de servicio público, de buena fe y en la esperanza razonable de que ellos y la concesionaria serían protegidos en el ejercicio y disfrute de un privilegio exclusivo.

El artículo 53 otorga a la Comisión ''poder para determinar los términos y condiciones de las franquicias, derechos, privilegios o concesiones, que otorgare.'' La Comisión ejerció este poder de determinación cuando confirió a la White Star Bus Line autoridad exclusiva para establecer, mantener y explotar un servicio de guaguas, mediante paga

para el transporte de pasajeros por las rutas que fijare la Comisión. Esto fué, a nuestro juicio, una "determinación legal" dentro del significado de esa frase conforme la misma es usada en el artículo 67 de la Ley de Servicio Público. En ninguna parte de los autos que tenemos ante nos aparece íntegramente la orden de la Comisión de Servicio Público tal cual fué enmendada en 1935. De la opinión emitida en el caso de *White Star Bus Line, Inc.* v. *Corte de Distrito,* 52 D.P.R. 837, se desprende que la White Star Line fué la peticionaria en el procedimiento que dió lugar a que se dictara la orden original. Los autos que mediante *certiorari* fueron elevados a este tribunal en aquel caso, ya han sido devueltos a la corte de distrito. Es lógico inferir que una copia completa de la orden, bien fuera en su forma original o en la forma enmendada, suministraría más información que la contenida en la parte dispositiva de la misma. De todos modos, no tenemos razón para creer que la Comisión no siguió el procedimiento fijado en el artículo 67 de la Ley de Servicio Público. En un procedimiento para obtener una orden o una enmienda de la misma, la Comisión no puede equivocarse si toma como guía la norma trazada por la Legislatura en otras partes de la ley, como, por ejemplo, en los incisos (*a*) y (*l*) del artículo 3, a saber, "aquel servicio, incluyendo facilidades, que en todo sentido fuere justo, seguro, razonablemente adecuado, y prácticamente suficiente para el acomodo y seguridad de sus favorecedores, empleados, y del público", "según la conveniencia y seguridad general del público requiriere." Conforme hemos demostrado, la Ley de Servicio Público impone a toda compañía de servicio público el deber de obedecer todas las órdenes legales de la Comisión. El artículo 95 creó y definió el delito y fijó la penalidad que debía imponerse por infracciones a la misma al ordenar que:

"Si cualquier compañía de servicio público...dejare, omitiere, desatendiere o se negare a obedecer, observar y cumplir cualquier disposición, requisito, determinación u orden final que hubiere dic-

tado la Comisión... dicha compañía de servicio público pagará al Tesoro de Puerto Rico una suma no menor de cincuenta (50) dólares ni mayor de mil (1,000) dólares por dicha infracción, omisión, falta, desatención o negativa..."

En el caso número 7770, *En el asunto de la White Star Bus Line, Inc., etc., Jaime Ortiz et als., apelantes,* ante, página 390, este tribunal dijo:

"Por tanto, si la Ley de Servicio Público ha de tomarse en su valor a la par, la Comisión de Servicio Público tenía pleno derecho a reglamentar el tránsito y a prohibir absolutamente a los dueños de vehículos de motor que transportaran pasajeros a cinco centavos por asiento o sin obtener un certificado o autorización de la Comisión de Servicio Público.

"No podemos convenir con los apelantes en que la Comisión de Servicio Público está creando un delito. Lo que hace prima facie es ejercer autoridad para reglamentar el tránsito de personas como los apelantes y otros que se dedican al mismo negocio, en este caso, dentro de las municipalidades de San Juan y Río Piedras y puntos intermedios. Los casos son claros al efecto de que a las órdenes de las comisiones de servicio público y de otros cuerpos administrativos puede ponérseles en vigor mediante una disposición penal general como la contenida en el artículo 95, supra."

La teoría del segundo señalamiento es que la sección 95 es nula por ambigua. El argumento es: que dicha sección no dice cuáles son las órdenes cuya inobservancia constituye delito; para el legislador la infracción de una orden, ora sea ésta legal o ilegal, ora sabia o torpe, ya sea posible o imposible su cumplimiento, constituye un delito; actos que se consideran delictivos deben describirse minuciosamente si es que se persigue que los ciudadanos se abstengan de cometerlos. En este càso el apelante cita de 16 Corpus Juris 67 y 68, sección 28, y de la nota 10 varios extractos que a su vez citan *Czarra* v. *Board of Medical Supervisors of the District of Columbia,* 25 App. (D.C.) 443; *U. S.* v. *Capital Traction Co.,* 34 App. (D.C.) 592; *U. S.* v. *Washington R. etc. Co.,* 34 App. (D.C.) 599; *Stoutenburgh* v. *Frazier,* 16 App. (D.C.) 229, 234; *State* v. *Gaster,* 45 La.

Ann. 636, 638; *Augustine* v. *State,* 52 S. W. 77. También nos refiere a 16 Corpus Juris 62, en apoyo de su contención al·efecto de que la facultad para determinar qué actos serán constitutivos de delito no puede conferirse a ningún departamento de la rama ejecutiva del gobierno, de lo cual concluye que un estatuto penal que no describe el delito que castiga y que deja a una comisión el determinar lo que se considerará un delito, es nulo, tanto en lo que se refiere a la infracción de principios constitucionales como por el hecho de su ambigüedad. Quizá una respuesta suficiente a este argumento puede encontrarse en 12 C. J. 846, 852, secciones 329, 338, subdivisiones "Definiendo ofensas penales" y "Poder para fijar la pena", donde leemos lo siguiente:

"*Definiendo ofensas penales.* Se ha resuelto por algunas autoridades que el departamento legislativo no puede delegar en un funcionario ejecutivo el poder de determinar qué actos en relación con determinada materia constituirán un delito. Los casos a este efecto en las cortes federales de inferior categoría, sin embargo, han sido revocados por la Corte Suprema de los Estados Unidos, y está ahora establecida la regla de que la legislatura puede autorizar un funcionario a formular reglas y reglamentos con el propósito de llevar a cabo los fines del estatuto y puede hacer que una infracción de estas reglas constituya delito, castigable en alguna forma fijada por la ley vigente.

"*Poder para fijar la pena.*—Como regla general, la legislatura no puede delegar en una comisión el poder de fijar una pena. Sin embargo, puede autorizar a una comisión de ferrocarriles a fijar los deberes sobre los cuales un estatuto imponiendo una pena había de regir; y se ha resuelto que la legislatura puede aun delegar el poder de fijar una pena por una infracción de un reglamento, en aquellos casos en que la fijación de una pena justa envuelve la consideración de tantos hechos que ella no puede ser debidamente fijada por la asamblea legislativa."

Sea ello como fuere, interpretando la sección 95 a la luz de su contexto, creemos que las órdenes a que hemos hecho referencia son órdenes tan razonables y legales como las que puedan dictarse por la comisión en el ejercicio de la auto-

ridad conferídale por la Ley de Servicio Público, y, en ausencia de una demostración más fuerte, no estamos preparados para decir que la sección es nula por ambigua.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor De Jesús no intervino.