Roy ARMSTRONG, et al., Plaintiffs,

v.

Victor RAMOS, et al., Defendants.

Civil No. 99–1138(JP).

United States District Court, D. Puerto Rico.

Oct. 25, 1999.

Ramón L. Viñas–Bueso, Rivera Tulla & Ferrer, Hato Rey, PR, for plaintiff.

Gloria Robinson–Guarch, Department of Justice of P.R., San Juan, PR, for defendant.

*MEMORANDUM AND ORDER*

PIERAS, Senior District Judge.

## I. Introduction

The Court has before it Plaintiffs' Memorandum of Law Contesting That a Violation of a DNR Rule Provides a Ranger Probable Cause to Arrest (**docket No. 20**), Defendant Víctor Ramos' Opposition (docket No. 21), and Plaintiffs' Reply (docket No. 25).

Plaintiffs Roy Armstrong ("Armstrong"), Linda Riggs ("Riggs"), and the conjugal partnership constituted between them (collectively, "Plaintiffs") filed a Complaint on February 5, 1999, alleging claims under the Fourth, Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as supplemental claims arising under Article II, Sections 1, 7, and 8 of the Puerto Rico Constitution, pursuant to P.R. Laws Ann. tit. 31, § 5141. Plaintiffs seek monetary damages for Armstrong's arrest by officers of Puerto Rico's Department of Natural [and Environmental] Resources ("DNR"), which Plaintiffs assert was pursuant to an invalid DNR Regulation and therefore without probable cause. The question before the Court is whether DNR Rangers Corps officers have the power to perform arrests for violations of DNR Regulations where such violations take place in their presence.

La Parguera is a natural reserve in southwestern Puerto Rico. Located in the area of Lajas, La Parguera consists of spectacular mangrove forests along the shoreline, a series of offshore keys, and bays featuring one of the Caribbean's most extensive coral reef systems. The area is of great ecological value, serving as home to endangered species and one of the world's few remaining bioluminescent bays. Given the presence of endangered species and the distinctive environmental characteristics of the mangroves and coastal waters of La Parguera, the ecosystems there are highly sensitive. The United States and Puerto Rico governments

have both recognized the need to conserve La Parguera's unique natural resources.

Armstrong works as a professor at the Department of Marine Science of the University of Puerto Rico, Mayagüez Campus, in the facilities located at Magueyes Island in La Parguera. Armstrong and Riggs permanently reside in House No. 50 of the maritime littoral of La Parguera, as lessees of José Lugo. Plaintiffs' house was extensively damaged by Hurricane Georges—most of the roof and part of the entrance walkway and handrails were destroyed. As a result, Mr. Lugo retained the services of a private contractor to replace the roof of the house. While the roof was being replaced, Plaintiffs lived in a boat docked at the house.

Plaintiffs state that on September 27, 1998, Defendant Víctor Ramos ("Ramos") arrived at Plaintiffs' house in an official DNR boat with DNR officers Elmer Zapata Padilla and Calex Figueroa Bobé. Ramos asked Armstrong about the roof, and Armstrong explained that it was being replaced by a contractor who had been retained by the owner of the house. Armstrong also explained that he was concerned that once the electric power utility was reinstated, the exposed live electrical conduits would not be protected if the roof were not replaced. Ramos told Armstrong to continue replacing the roof and to attend an emergency meeting scheduled for the next day to discuss emergency repairs to houses affected by Hurricane Georges.

The next day, on September 28, 1998, Plaintiffs explain that Ramos arrived at their home around noon in the DNR boat, accompanied by officers Nelson Villanueva and Alexis Ramírez Pérez. Ramos again inquired about the roof, and Armstrong again told him about the repairs as well as the fact that he was planning to attend the 4:30 p.m. meeting scheduled for that afternoon. Ramos threatened Armstrong with arrest, and Armstrong said he would voluntarily submit to an arrest if Ramos could produce a warrant. Ramos immediately handcuffed Armstrong and arrested him without a warrant.

Plaintiffs argue that Ramos' contention that he had probable cause to arrest Armstrong for violating of Regulation 4860 is flawed. The Natural [and Environmental] Resources Rangers of the Department of Natural Resources Act of 1977 authorizes arrests when a citizen commits a criminal offense in the presence of a member of the corps. The Legislative Assembly, however, has the exclusive power to determine what are criminal offenses and to indicate punishments. *See Rodríguez Rodríguez v. Estado Libre Asociadode Puerto Rico*, 130 D.P.R. 562, 569, 1992 WL 755634 (1992). Thus, even if Armstrong was somehow violating Regulation 4860, violation of a Regulation, promulgated not by the Legislative Assembly but rather by an agency, could not serve as a valid legal basis for Ramos' arrest of Armstrong.

Defendant Ramos agrees that on September 27, 1998, he approached Armstrong and informed him of a meeting being held the next day regarding repairs of houses at La Parguera. He states that he ordered Armstrong to stop all repairs that were being done on his home, House No. 50, until after the meeting was held. On September 28, 1998, while Ramos again patrolled the area, Ramos saw that Armstrong continued to repair House No. 50. Ramos told Armstrong to stop repairing the house until after he attended the meeting scheduled for that evening, but Armstrong refused. Ramos indicates that Armstrong said he would pay a fine if necessary, but that he would continue to repair the house. Ramos then came aboard Armstrong's boat and arrested him.

Ramos claims he had probable cause to arrest Armstrong because he was in violation of Regulation 4860, known as the "Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos Bajo Estas y la Zona Marítimo

Terrestre" (Dec. 29, 1992),[1] which in Article 4.3 forbids the repair or enlargement of any structure in designated areas without previous authorization by the Department of Natural Resources. Articles 5B(1) and 5B(2)(b) of Regulation 4860 authorize Ramos to arrest anyone who is violating the laws of Puerto Rico relating to the conservation and development of natural resources, when that violation occurs in his presence. Regulation 4860 also permits Ramos to verbally order the cessation of any activity taking place under the jurisdiction of the Secretary of Natural Resources without the necessary authorization. For these reasons, Ramos asserts that he had probable cause to arrest Armstrong. Ramos further contends that the Rangers Corps has the power to effect arrests for violations of DNR regulations under the authority of the organic law that creates the Department of Natural Resources, P.R. Laws Ann. tit. 12, §§ 1201–1210.[2]

## II. Discussion

In 1972, the Puerto Rico Legislative Assembly established the Department of Natural Resources. *See* P.R. Laws Ann. tit. 3, § 152, Act No. 23 of June 20, 1972, as amended ("Act No. 23"). Act No. 23, the DNR's enabling act, delegated to the DNR the responsibility to implement Section 19 of Article VI of the Constitution of Puerto Rico, relating to the conservation of Puerto Rico's natural resources and the development and good use of those resources for the general benefit of the public. *Id.* at § 153; P.R. CONST., art. VI, § 19. Act No. 23 further conferred upon the DNR the duty to "exercise surveillance and see to the conservation of the territorial waters, submerged lands thereunder and the maritime-terrestrial zone, to grant

franchises, permits and licenses of public nature for its use and exploitation and to establish through regulations the fees to be paid by the same." P.R. Laws Ann. tit. 3, § 155(h).

To carry out this mandate, the Legislature authorized the DNR "to adopt, amend and repeal regulations to carry out the objectives of this chapter . . . ." P.R. Laws Ann. tit. 3, § 155(d). Act No. 23 further provides that "[a]ny violation of this chapter or of the regulations promulgated hereunder shall constitute a misdemeanor." *Id.*, § 158. Thus, by enacting sections 155(d) and 158, the Legislative Assembly delegated to the DNR the power to promulgate regulations relating to the conservation and good use of Puerto Rico's natural resources, and defined as a criminal misdemeanor any violation of those regulations. On December 29, 1992, the DNR promulgated Regulation 4860, "Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos Bajo Estas y la Zona Marítimo Terrestre," which sets forth prohibited activities in the territorial waters, submerged lands thereunder and the maritime-terrestrial zone; rules governing the granting of permits, licenses and concessions; and penalties for the violation of any of the provisions therein.

In 1977, the Legislative Assembly passed the "Natural [and Environmental] Resources Rangers of the Department of Natural Resources Act," ("Rangers Act of 1977") creating a civil guard corps ("Rangers Corps") vested with the power to "use all available means to protect, supervise, conserve, defend and safeguard our natural resources." P.R. Laws Ann. tit. 12, §§ 1201–02, 1204. Section 1205(a) outlines the duties of the Rangers Corps, which

---

1. Regulation for the Good Use, Vigilance, Conservation and Administration of the Territorial Waters, the Lands Submerged Thereunder and the Maritime-terrestrial Zone.

2. Defendant, in its Opposition, also briefed the issue of qualified immunity. Because the

Initial Scheduling Conference Order of June 21, 1999 (docket No. 19) ordered briefs on the narrow issue of the legality of the DNR Regulation, the Court will not address Defendant's qualified immunity arguments in this Memorandum.

includes the duty "[t]o enforce compliance with all the laws and regulations of the Commonwealth of Puerto Rico referring to the conservation and development of its natural resources." *Id.,* § 1205(a)(8). Section 1205(b) sets forth the powers of the Rangers Corps. For violations of laws related to the protection, conservation and supervision of the natural resources of Puerto Rico, the Rangers Corps are given a broad range of powers including the power to inspect and request the presentation of a permit or license, verbally order the immediate cessation of any activity carried out without proper DNR authorization, execute search and arrest warrants, and "perform arrests when the offense is committed in their presence." *Id.,* § 1205(b)(2)(A)-(J). Section 1205(b)(1) further provides the Rangers Corps with the power

> [t]o make arrests for attempted violation or violations of the laws indicated in subdivision (a) of this section, when the attempt to commit the violation, or the violations, was committed in the presence of any Corps member.... Provided, that the laws or procedures applicable to arrests by police officers shall be equally applicable to the Natural [and Environmental] Resources Rangers Corps. Such Rangers may enter the property and waters of the Commonwealth without such action being considered as trespassing.

*Id.,* § 1205(b)(1).

■ Plaintiffs first argue Regulation 4860 is invalid because only the legislature has the authority to criminalize conduct, and the DNR, by setting forth prohibited conduct in a regulation, is unlawfully "legislating." It is settled law that the legislature may delegate to administrative agencies the power to promulgate regulations necessary or relevant to their effective functioning, violation of which would constitute a criminal offense. *See United States v. Grimaud,* 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911). In *Grimaud,* the United States Supreme Court upheld an administrative regulation made and promulgated by the Secretary of Agriculture under the authority conferred upon him by the forest reserve acts. *See id.* at 522, 31 S.Ct. at 485, 55 L.Ed. 563. The forest reserve acts authorized the Secretary of the Agriculture to "make such rules and regulations and establish such service as will insure the objects of such reservations; namely, to regulate their occupancy and use, and to preserve the forests thereon from destruction ..." *Id.* at 509, 31 S.Ct. at 481, 55 L.Ed. 563. Those acts further provided that "any violation of the provisions of this act or such rules and regulations shall be punished" by a fine of not more than $500 and imprisonment for not more than twelve months, or both. *See id.* Under the authority of these acts, the Secretary of Agriculture promulgated regulations proscribing the grazing of stock upon a forest reservation without a permit. *See id.*

The defendants in *Grimaud,* who had been indicted for grazing stock on a forest reservation without the necessary permit from the Secretary of Agriculture, challenged the validity of the act of Congress making it an offense to violate a regulation promulgated by the Secretary of Agriculture, on the grounds that such constituted an unconstitutional delegation of legislative power to an administrative agency. *See id.* at 510, 31 S.Ct. at 482, 55 L.Ed. 563. The Court upheld the validity of the delegation, stating:

> From the beginning of government, various acts have been passed conferring upon executive officers the power to make rules and regulations, not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could

be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress, or measured by the injury done.

*Id.* at 517, 31 S.Ct. at 483, 55 L.Ed. 563. The Court emphasized that to deny the legislature the ability to delegate its power to agencies to fill in the details of a legislative mandate would "stop the wheels of government." *Id.* at 520, 31 S.Ct. at 484, 55 L.Ed. 563. The Court thus ruled that violation of the regulation was made a crime not by the agency, but rather by virtue of Congress' acts which provided that violations of such regulations shall be criminally punishable, and therefore there was no unlawful delegation of legislative power. *See id.*

The Puerto Rico Supreme Court has also confronted a situation analogous to the case at bar. In *Rivera González v. Lugo,* 53 D.P.R. 684 (1938), the Puerto Rico Supreme Court adjudicated a challenge to the legality of a legislative delegation of power to an agency. The Puerto Rico Legislative Assembly had created the Public Service Commission, an executive agency, and had authorized it to promulgate regulations necessary for the fulfillment of its duties under the law. *See id.* at 4. The legislature also provided, in a separate law, that a violation of any Public Service Commission rule or order would constitute a crime punishable by a fine of no less than fifty dollars and no more than one thousand dollars. *See id.* at 10. The petitioner in *Rivera González* was convicted of violating an order of the Public Service Commission which prohibited the use of a motor vehicle as a common carrier for the transportation of passengers for profit without prior authorization by the Commission. *See id.* at 1. The petitioner argued that by issuing an order, the violation of which constituted a crime, the Public Service Commission was in effect creating the crime. *See id.* at 11. This, alleged petitioner, violated the well-established rule that only the legislature may criminalize conduct. *See id.*

The Puerto Rico Supreme Court disagreed, and affirmed the conviction. The Court noted that "the rule is now established that the legislature may authorize a functionary to formulate rules and regulations with the purpose of carrying out its statutory purpose *and may provide that a violation of those rules constitutes a crime,* punishable in some form established by the law." *Id.* at 11 (quoting 12 Corpus Juris 846, § 329) (emphasis added). The Court therefore held that in accordance with the rule of law set forth above, the legislature, not the agency, had created the crime in question by providing that a violation of the rules promulgated by the agency shall constitute a crime. *Id.*

■ The holdings in *Grimaud* and *Rivera González* dispose of Plaintiffs' contention that the DNR created the crime by adopting Regulation 4860. Regulation 4860 was promulgated pursuant to Act No. 23 of the Legislative Assembly, which both authorized the DNR to enact regulations in furtherance of its statutory mission, and provided that "[a]ny violation of this chapter *or of the regulations promulgated hereunder* shall constitute a misdemeanor." P.R. Laws Ann. tit. 3, § 158 (emphasis added). Regulation 4860 furthers the DNR's statutory mission to safeguard Puerto Rico's natural resources and, in particular, to "carry out the vigilance and conservation of the territorial waters, the lands submerged under these, and the maritime-terrestrial zone." P.R. Laws Ann. tit. 3, § 155(h). The purpose of the prohibition in Article 4.3 of "the repair or amplification of a structure on the public maritime-terrestrial domain without a permit previously granted by the Secretary [of the DNR]," explained generally in Article 1.3, is to prevent the erosion and degradation of the maritime littoral occasioned by unregulated construction and development in that area, and to establish criteria and mechanisms for the surveillance, conservation, and restoration of the maritime-territorial zone. Regl. 4860, arts. 1.3, 4.3 (transl.ours). Thus, as in *Grimaud* and

*Rivera González,* because the Legislative Assembly provided by law that a violation of the regulations promulgated by the DNR in furtherance of its statutory duties would constitute a crime, the legislature, not the agency, has created the crime.

■ Moreover, pursuant to *Hilton Hotels v. Junta De Salario Mínimo,* 74 D.P.R. 670 (1953), the Court finds that the delegation to the DNR in Act No. 23 is not vague or overly broad. In the New Deal era, the U.S. Supreme Court declared unconstitutional several federal statutes containing broad and vague delegations of power to administrative agencies. *See A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *Carter v. Carter Coal Co.,* 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936). Since the New Deal, however, the exigencies of modern government have lead the courts to take an increasingly narrow view of the non-delegation doctrine, and the U.S. Supreme Court has not invalidated any other legislation on those grounds. The Puerto Rico Supreme Court has also made clear that to be valid, a delegation "need not be expressed with precision or mathematical exactitude . . . so long as the standard is not so vague that as a matter of fact it does not exist, the presumption of constitutionality that each law carries is sufficient to sustain its validity." *Hilton Hotels,* 74 D.P.R. at 693 (transl. ours). It is sufficient that a law "indicates or establishes broad, general norms that serve to guide or direct administrative agencies, so that they, with their experience and specialized knowledge, apply these norms concretely to the facts that might arise and fill in the details that implement the general legislative policy." *Id.*

Act No. 23 created the DNR and entrusted the agency with duty to protect Puerto Rico's natural resources in the territorial waters, the lands submerged thereunder, and the maritime-terrestrial zone, and to grant licenses and permits for activities taking place in these areas. *See* P.R. Laws Ann. tit. 3, §§ 155(d) and (h). The DNR's authority relates only to specific geographical areas, and is limited to regulating with respect to the conservation and use of the natural resources in those areas. The delegation, therefore, is not so broad or vague that it does not in fact exist. Article 4.3 of Regulation 4860 implements the DNR's statutory mission, or "fills in the details," by setting forth an activity which necessitates prior DNR authorization. Article 4.3 applies specifically and exclusively to activities in the maritime-terrestrial public domain, which is closely linked to the DNR's authority to protect Puerto Rico's natural resources in such areas. Without the authority to specify the activities for which licenses and permits must be issued, the power to grant such licenses would be rendered a nullity.

Plaintiffs' second argument is that although section 1205(a)(8) of the Rangers Act of 1977 imposes upon the Rangers Corps the duty to enforce compliance with all the "laws and regulations" related to the conservation and development of Puerto Rico's natural resources, sections 1205(b)(1) and (b)(2) only grant the Rangers Corps the power to effect arrests for violations of "laws." Thus, according to the maxim of statutory construction *expressio unius est exclusio alterius,* by referring only to "laws" and not "regulations" in sections 1205(b)(1) and (b)(2), the legislature intended the power of arrest to be circumscribed to those offenses delineated by laws passed by the legislature itself, not by regulations enacted by the DNR. Plaintiff maintains, therefore, that because Armstrong was only alleged to have violated a regulation, and not a "law," the Rangers Corps did not have the power to effect an arrest on that basis.

■ Defendants counter that a duly enacted regulation has the force and effect of law and becomes an integral part of the enabling statute. This is only partly correct. Administrative law distinguishes be-

tween legislative regulations and interpretative regulations. *See Agosto Serrano v. Fondo del Seguro del Estado,* 132 D.P.R. 866, 11–12 (1993); *see also Batterton v. Francis,* 432 U.S. 416, 424 & n. 9, 97 S.Ct. 2399, 2405–06 & n. 9, 53 L.Ed.2d 448 (1977). Legislative regulations are issued by an agency pursuant to a statutory delegation and implement the statute; these regulations have the force and effect of law. *See Agosto Serrano,* 132 D.P.R. 866, 873 & n. 3. By contrast, interpretative rules serve an advisory function by explaining the meaning given by the agency to a particular word or phrase in a statute or rule it administers. *See Batterton v. Marshall,* 648 F.2d 694, 705 (D.C.Cir. 1980). As explained by the D.C. Circuit:

> An interpretative rule is one which does not have the full force and effect of a substantive rule but which is in the form of an explanation of particular terms in an Act. If you had an expression in a statute such as "Interurban Railway," the query might come up as to what is an "interurban railway." A particular agency may adopt a rule defining an interurban railway. That, in a sense, may be called an interpretative rule.

*Id.* (quoting *Gibson Wine Co. v. Snyder,* 194 F.2d 329, 331–32 (D.C.Cir.1952)). A court is not required to give effect to an interpretative rule. *See Agosto Serrano,* 132 P.R. Dec. at 873.

■ Here, the agency enjoys delegated authority, through Act No. 23, to prescribe rules and regulations with the force of law concerning the surveillance and conservation of the maritime-terrestrial zone. *See* P.R. Laws Ann. tit. 3, § 155(d). The Legislative Assembly also granted the DNR express statutory authority to "grant franchises, permits and licenses of public nature for [the maritime-terrestrial zone's] use and exploitation." P.R. Laws Ann. tit. 3, § 155(h). Article 4.3 of Regulation 4860 requires prior authorization of the DNR before initiating repairs or expansion of a structure in the maritime-terrestrial zone. This Regulation is not explanatory in na-

ture, but rather implements the statutory delegation contained in sections 155(d) and (h). Article 4.3 of Regulation 4860 is therefore a legislative rule and, pursuant to *Agosto Serrano,* that Regulation becomes part of the agency's enabling act and has the same legal status as a law passed by the legislature. *See Agosto Serrano,* 132 P.R. Dec. at 873. Thus, Plaintiff's argument that the statutory reference to "laws" in sections 1205(b)(1) and (b)(2) somehow excludes regulations is unavailing.

Nor does the case at bar involve an agency acting ultra vires by creating its own police force with arrest powers absent express statutory authority. In *El Pueblo de Puerto Rico v. Rosario Igartúa,* 129 D.P.R. 1055, 1992 WL 754959 (1992), the Puerto Rico Supreme Court held that without an express delegation, an executive agency could not create its own police force with powers analogous to the Puerto Rico Police. The agency, the Land Authority of Puerto Rico, had created its own police force pursuant only to the statutory directive that it was empowered to name "functionaries, agents and employees" and to confer upon them non-delegable powers. *Id.* at 1069. The enabling act did not grant the Land Authority the power to create such a police force with arrest powers. *See id.* Without an express delegation, the Puerto Rico Supreme Court held that such powers could not be conferred on agents or employees of the Land Authority. *See id.*

■ The Rangers Corps, on the other hand, were themselves created by express statutory language in the Rangers Act of 1977. *See* P.R. Laws Ann. tit. 12, §§ 1201–02. That Act further conferred on the Rangers Corps the power to perform arrests for offenses committed in their presence. *Id.,* § 1205(b). While the Court does not decide whether there was probable cause to perform an arrest in this case, as a matter of law officers of the Rangers Corps do have the power to arrest for violations of DNR statutes and

regulations that take place in their presence.

## III. Conclusion

For the reasons stated above, the Court **HOLDS** that Article 4.3 of DNR Regulation 4860 is valid and, therefore, violation of the same may provide probable cause for an arrest. Thus, the Court hereby **ORDERS** that Plaintiffs may not raise the defense of the lack of probable cause based on the invalidity of Article 4.3 of Regulation 4860 in this case.

**IT IS SO ORDERED.**