CC-2001-360                                            1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina de Ética Gubernamental<br><br>   Querellante-Recurrida<br><br>             v.<br><br>Nydia E. Rodríguez Martínez y otros<br><br>   Querellados-Peticionarios | Certiorari<br><br>2003 TSPR 48<br><br>158 DPR ＿＿＿ |

Número del Caso: CC-2001-360


Fecha: 1$^{ro}$ de abril de 2003


Tribunal de Circuito de Apelaciones:
                     Circuito Regional I


Panel integrado por su Presidenta, la Juez López Vilanova y los Jueces Córdova Arone y Ortiz Carrión

Abogado de la Parte Peticionaria:
                     Lcdo. Francisco R. González


Abogadas de la Parte Recurrida:
                     Lcda. Gretchen Camacho Rossy
                     Lcda. Wanda Torres Velázquez


Materia: Violación Ley Ética Gubernamental

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Oficina de Ética Gubernamental

    Querellante-recurrida

        vs.                              CC-2001-360        CERTIORARI

Nydia E. Rodríguez Martínez y
otros

    Querellados-peticionarios

    **Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ**

    San Juan, Puerto Rico, a 1ro. de abril de 2003

    Mediante el presente recurso se nos solicita la revisión de una sentencia emitida por el Tribunal de Circuito de Apelaciones, confirmatoria la misma de una resolución de la Oficina de Ética Gubernamental que impuso una multa de diez mil dólares ($10,000) a la aquí peticionaria tras haberse encontrado a ésta incursa en la violación de varias disposiciones de la Ley y Reglamento de Ética Gubernamental, así como de la Constitución del Estado Libre Asociado de Puerto Rico.

I.

    Los hechos que dan lugar al presente recurso se relacionan a la celebración del 80mo

Aniversario de la Comisión de Servicio Público (en adelante "CSP"). Con motivo de este evento, la CSP organizó varias actividades dirigidas al público en general tales como la publicación y distribución de folletos informativos. Además, se llevaron a cabo conferencias, talleres educativos y exhibiciones a concesionarios, funcionarios y empleados públicos. La actividad cumbre de esta celebración fue una convención celebrada en el Hotel Caribe Hilton durante el mes de noviembre de 1997 en la cual participaron concesionarios de la CSP, funcionarios de la Rama Ejecutiva, Legislativa, Judicial, empleados públicos, incluyendo los de la CSP, la empresa privada y el público en general. En la misma se ofrecieron talleres, conferencias y una plenaria donde se expusieron, entre otros temas, la importancia e impacto de las decisiones de la CSP en el desarrollo económico y social del país.

A los fines de efectuar las actividades antes descritas, la aquí peticionaria, la Lcda. Nydia E. Rodríguez Martínez, ejerciendo sus facultades como Presidenta de la CSP, firmó un contrato de servicios profesionales y consultivos entre la CSP y la Sra. Maitá Carbonell Acosta. Esta última estaría a cargo de la coordinación, organización y desarrollo de la convención, así como de la preparación de un suplemento informativo y conmemorativo a circularse a través de la prensa del país. La señora Carbonell Acosta subcontrató

los servicios de la Compañía Arta Promotions, Inc. (en adelante "Arta") para la promoción y preparación del referido suplemento.[1] Esta compañía designó a la Sra. Laila Shwaiki como su representante, la cual se encargaría de todo lo referente al suplemento informativo de la CSP.

En varias ocasiones se llevaron a cabo reuniones en la CSP para la coordinación de la actividad y del suplemento informativo, a las cuales asistieron las señoras Shwaiki y Carbonell Acosta. Estas reuniones estaban dirigidas por el Sr. Luis A. Colón Villamil y la Sra. Marien Casanova, quienes eran funcionarios de la CSP y designados por la peticionaria Rodríguez Martínez para organizar las actividades del 80mo Aniversario de la agencia. En estas reuniones se acordó que, para cubrir los costos de la confección del suplemento, se solicitarían auspicios y/o aportaciones económicas a varias empresas. La señora Shwaiki estaría encargada de darle seguimiento a los auspiciadores con relación a las aportaciones que éstos habrían de hacer. Estas empresas serían identificadas mediante una lista de prospectos preparada por el señor Colón Villamil. La señora Shwaiki le ofrecería a los prospectos diversos beneficios a cambio de la aportación realizada. Mientras mayor fuera el monto de la aportación mayores beneficios recibirían

---

[1] **Resulta importante señalar que la CSP no realizó contrato alguno con Arta.**

las empresas. Estos beneficios consistían en la inclusión de un anuncio de la empresa en el suplemento que se distribuiría, tarjetas de invitaciones a la Convención, y los que hicieran la aportación máxima de $10,000 podrían tener un "booth" en la actividad y su logo tendría mayor prominencia en el suplemento.

Previo a la convención, la Lcda. Rodríguez Martínez efectuó varias reuniones, entre ellas un desayuno y un almuerzo,[2] a las que fueron invitadas diferentes personas de la empresa privada, compañías reglamentadas por la CSP, funcionarios de dicha agencia, la señora Shwaiki y la señora Carbonell. Las invitaciones para estas reuniones se realizaron mediante cartas idénticas, en papel timbrado de la CSP y firmadas por la peticionaria como Presidenta. En éstas se hacía referencia a la convención que se llevaría a cabo en el Hotel Caribe Hilton y que, con motivo de ese evento, la CSP deseaba ofrecerle al pueblo de Puerto Rico un documento informativo que reflejara los servicios, ejecutorias, logros y proyecciones de dicha agencia.

Para el desayuno se enviaron treinta y dos (32) invitaciones, de las cuales dieciséis (16) iban dirigidas a empresas o personas reglamentadas por la CSP. Las demás se dirigieron a empresas no reglamentadas por la misma. Finalmente, asistieron a dicho desayuno

---

[2] El desayuno se llevó a cabo el 9 de septiembre de 1997 y el almuerzo el 16 de septiembre de ese mismo año.

doce (12) representantes de empresas reglamentadas por la CSP y seis (6) que no lo eran.[3] Por otra parte, al almuerzo fueron invitadas once (11) empresas que eran reglamentadas por la CSP, asistiendo al mismo representantes de diez (10) de dichas empresas.

En ambas reuniones, la Lcda. Rodríguez Martínez se dirigió a los presentes y les habló de la actividad del 80$^{mo}$ aniversario de la CSP, del suplemento y les presentó a la señora Carbonell Acosta como la persona que se encargaría de la actividad y a la señora Shwaiki quien se encargaría de darle seguimiento a los auspicios. Al culminar el almuerzo, la señora Shwaiki entregó a todos los invitados una "propuesta" escrita en la que se les sugería que cada empresa hiciera una aportación para el suplemento de $10,000, cantidad que fue sugerida por la señora Carbonell Acosta. La propuesta iba dirigida individualmente a cada una de las empresas presentes y fue preparada por la señora Shwaiki con información sobre dichas empresas que le había sido suministrada, por "fax", desde la CSP por la señora Casanova.

Luego del desayuno y del almuerzo la señora Shwaiki, por instrucciones de la señora Carbonell, se comunicó con las diferentes empresas que acudieron a estas dos actividades; a las que asistieron al almuerzo

---

[3] **Durante el desayuno se hizo constar la asistencia de los presentes mediante una hoja con el encabezamiento "Gobierno de Puerto Rico/Hoja de Asistencia" en la cual**

las trataba de persuadir para que aportaran $10,000 y a las que acudieron al desayuno les insistía en que aportaran la cantidad que aparecía para cada una de ellas en una lista que le fue suministrada, por "fax", desde la CSP por la señora Casanova. Dicha lista fue preparada con una copia de la hoja de asistencia del desayuno a la cual se le añadió, al lado del nombre de las empresas que asistieron, la cantidad de dinero que se esperaba que cada una hiciera.

El proceso de búsqueda de auspiciadores finalizó con un total de dieciocho (18) aportaciones que sumaban a sesenta y tres mil quinientos dólares ($63,500). De esta cifra sesenta y un mil dólares ($61,000) fueron aportados por 17 empresas o personas reglamentadas y supervisadas por la CSP.[4]

La convención del Caribe Hilton se llevó a cabo y ese mismo día salió en la prensa el suplemento informativo. El mismo consistía de ocho páginas y narraba la historia, funciones y logros de la CSP, así como la importancia de esta agencia en el desarrollo social y económico de Puerto Rico. En la última página del mismo aparecía el logo de cada persona o empresa que aportó al suplemento mediante la compra de un anuncio. Las empresas que aportaron el máximo tuvieron la

---

las personas y empresas que asistieron debían poner su nombre y firma.

[4] Las aportaciones se hicieron mediante cheques endosados a nombre de Arta Promotions, Inc.

oportunidad de ocupar un "booth" en la convención y su logo en el suplemento era de mayor tamaño que el de las otras compañías participantes.

Luego de culminar la celebración del 80[mo] Aniversario de la CSP, la Oficina de Ética Gubernamental (en adelante "OEG"), en atención a comentarios vertidos en un programa radial, realizó una investigación.[5] A raíz de la misma, el 12 de enero de 1999, la OEG radicó una querella contra la aquí peticionaria, Nydia E. Rodríguez Martínez. También se radicaron cargos contra los funcionarios, Luis A. Colón Villamil y Marien Casanova. A todos se les imputó, en síntesis, haber solicitado aportaciones económicas a varias compañías reguladas y con asuntos pendientes de resolver ante la CSP para proporcionarle beneficio económico a Arta; esto en violación de los Artículos 3.2 (a) y (c) de la Ley de Ética Gubernamental (en adelante "Ley de Ética"),[6] los Artículos 6(A), 6(D), 6(E), 6(F), 8(F), 11(A) y 13(C) del Reglamento de Ética Gubernamental (en adelante "Reglamento de Ética"),[7] y la Sección 9 del Artículo VI

---

[5] El 5 de noviembre de 1997 la OEG recibió una comunicación de los señores Luis Francisco Ojeda y Alberto González Molina del programa radial "Esta Noche con Ojeda" que incluía unos documentos relacionados a una alegada solicitud de auspicios de $10,000 a empresas privadas por parte de la Lcda. Rodríguez Martínez, Presidenta de la CSP.

[6] Ley Núm. 12 de 24 de julio de 1985, según enmendada, 3 L.P.R.A. sec. 1801 y ss.

de la Constitución del Estado Libre Asociado de Puerto Rico.

Luego de varios incidentes procesales se celebró una vista administrativa en la OEG los días 20 y 21 de marzo de 2000. En la misma se presentaron como testigos a la señora Shwaiki, a la Sra. Wanda Marrero, representante de la empresa Tropigas, Inc. y al Sr. Julio Feliciano, presidente de la empresa Light Gas, Corp.[8] Por su parte, la Lcda. Rodríguez Martínez presentó como única testigo a la Sra. Teresa Caraballo de la Compañía de Turismo.[9]

Rendido el informe correspondiente por el oficial examinador que presidió la vista, mediante Resolución del 28 de julio de 2000, la OEG adoptó, en su totalidad, el informe de éste. En el mismo, el oficial examinador determinó que, de las violaciones imputadas, fueron probadas aquellas estatuidas en los Artículos 3.2(a) y (c) de la Ley de Ética y en las Secciones 11(A) y 6, en sus incisos (A),(D),(E) y (F) del Reglamento y la Sección 9 del Artículo VI de la Constitución del Estado

---

[7] Reglamento Núm. 4827 de 23 de noviembre de 1992.

[8] La Sra. Wanda Marrero y el Sr. Julio Feliciano estuvieron presentes en el almuerzo celebrado por la CSP y representaban a dos de las empresas reglamentadas por dicha agencia que realizaron aportaciones para el suplemento informativo.

[9] El testimonio de la misma versó sobre la práctica administrativa que se lleva a cabo en la publicación de anuncios de la revista "Qué Pasa" de la Compañía de Turismo.

Libre Asociado de Puerto Rico. Por motivo de estas infracciones, la OEG le impuso a la Lcda. Rodríguez Martínez una multa ascendente a $10,000.[10]

La Lcda. Rodríguez Martínez radicó una Solicitud de Enmienda a Determinaciones de Hechos, Nuevas Determinaciones de Hechos y Reconsideración. Tras varios incidentes procesales, la OEG declaró la misma "No ha lugar". Insatisfecha con dicho dictamen, la Lcda. Rodríguez Martínez acudió ante el Tribunal de Circuito de Apelaciones. Luego de varios incidentes procesales, el Tribunal de Circuito de Apelaciones, mediante Sentencia de 3 de abril de 2001, confirmó la determinación de la OEG.

---

[10] **El Director Ejecutivo de la OEG llegó a esta cifra acogiendo la recomendación del Oficial Examinador quien agrupó las multas a imponerse de la siguiente manera: (a) una multa administrativa conjunta de cuatro mil (4,000) dólares por violar los sub-incisos (2) y (3) de la Sección 11(A) del Reglamento y el Artículo 3.2(c) de la Ley de Ética; (b) tres mil ($3,000) dólares por violar el Artículo 3.2(a) de la Ley, la Sección 9 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, y los Artículos 6(E) y 6(F) del Reglamento; y (c) otra multa administrativa conjunta de tres mil ($3,000) dólares por violar los Artículos 6(A) y 6(D) del referido Reglamento.**

**Como mencionáramos previamente también se radicaron querellas contra Luis A. Colón Villamil y Marien Casanova. La OEG determinó que éstos incurrieron en la violación de varias de las disposiciones legales y reglamentarias que le fueron imputadas. Cada uno fue sancionado con una multa ascendente a tres mil doscientos cincuenta dólares ($3,250); no obstante, ninguno acudió en revisión judicial de dicha determinación. En vista de ello, este recurso se limita a revisar el dictamen en torno a la aquí peticionaria, Nydia E. Rodríguez Martínez.**

Inconforme con la actuación del tribunal apelativo intermedio, la Lcda. Rodríguez Martínez acudió oportunamente --vía certiorari-- ante este Tribunal. Alega que procede revocar la sentencia emitida por el tribunal apelativo debido a que dicho foro incidió al:

> ...determinar que la Oficina de Ética Gubernamental actuó correctamente al admitir en evidencia la declaración jurada tomada al Sr. Julio Feliciano en el proceso investigativo, sin que haya razones en derecho que lo justifiquen.

> ...sostener que la determinación de la Oficina de Ética Gubernamental no es arbitraria, caprichosa e irrazonable y que está sostenida por la prueba obrante en el expediente.

> ...sostener la conclusión de la Oficina de Ética Gubernamental en el sentido de que la recurrente-peticionaria incurrió en violación a los Artículos 3.2(a) y 3.2(c) de la Ley de Ética Gubernamental, a la sección 9 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico y a los Artículos 6(a), 6(d), 6(e), 6(f) y 11(a) del Reglamento de Ética Gubernamental.

> ...determinar que la multa de $10,000.00 impuesta no es exagerada, injusta e irrazonable y que no constituye una penalización múltiple por las mismas violaciones.

**Expedimos el recurso. Contando con la comparecencia de ambas partes y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.**

## II.

### A.

Como primer señalamiento de error la peticionaria Rodríguez Martínez plantea que la OEG incidió al admitir

en evidencia una declaración que se le tomó al testigo Julio Feliciano durante el proceso investigativo de la querella que da lugar a este recurso. Alega que se actuó de esta manera "sin base legal o situación de apremio alguna" y que tal admisión constituyó una violación a su derecho de confrontación. Catalogó la declaración como una ex-parte, la cual no se presentó con el fin de impugnar o confrontar al testigo sino que para ampliar su testimonio, lo que la hace inadmisible al amparo de la Regla 63 de las de Evidencia, 32 L.P.R.A. Ap. IV R.63.

**Para dilucidar este aspecto de la controversia es menester examinar lo ocurrido en la vista administrativa que se llevó a cabo en la OEG según se desprende de la transcripción oficial de dicho procedimiento. En la vista administrativa celebrada el 21 de marzo de 2000, la parte recurrida presentó como testigo al Sr. Julio Feliciano. Durante el interrogatorio directo del testigo, y en virtud de la Regla 63 de Evidencia, la representación legal de la parte recurrida solicitó que se admitiera como prueba la transcripción de una declaración que le fue tomada al señor Feliciano el 24 de junio de 1998. El representante legal de la peticionaria se opuso a la admisión de la misma.**

**Luego de una larga discusión sobre los fundamentos de derecho relacionados a la admisibilidad de la declaración, el oficial examinador resolvió que:**

"...yo voy a admitir tentativamente, y enfatizo el tentativamente, ... la declaración. Los compañeros, naturalmente, tendrán derecho a contrainterrogar sobre ambos puntos [el testimonio del testigo durante la vista y lo expresado por éste en la declaración anterior] y si en el momento el compañero me demuestra, el día, la jurisprudencia que encuentre de cualquier otro fundamento en derecho adecuado que esta declaración no se debió haber admitido, pues obviamente no será tomada en cuenta, ... ni el contenido de la declaración, ni el contenido del contrainterrogatorio relativo a ello. Así es que, aunque va a ser un poquito más complicado, vamos en el contrainterrogatorio a tratar de mantener una regla  y es que lo interroguen primero sobre lo que declaró hoy y, entonces, después lo interrogan por separado con relación a lo que declaró en la ocasión anterior de forma que si hay que, excluir el testimonio podamos excluir tanto la declaración en sí, como aquella parte del contrainterrogatorio que se requirió a esa declaración."[11]

Así las cosas, los abogados de la peticionaria contrainterrogaron brevemente al testigo con relación a lo declarado por él en la vista. <u>Cuando el oficial examinador les preguntó si deseaban contrainterrogar al testigo en cuanto a su declaración anterior, la representación legal de la peticionaria contestó en la negativa y el testigo fue excusado</u>.

B

Sabido es que en los procedimientos administrativos de carácter adjudicativo no son de aplicación las Reglas de Evidencia. Sección 3.13(e) de la Ley Núm. 170 de 12 de

---

[11] Transcripción Oficial de la Vista Administrativa ante la OEG, a la pág. 114; Petición de Certiorari, Apéndice 21, a la pág. 1950.

agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme, LPAU, 3 L.P.R.A. sec. 2163(e). Esta norma tiene como propósito liberar los procedimientos administrativos de las "trabas procesales de los tribunales de justicia". Martínez v. Tribunal Superior, 83 D.P.R. 717, 720 (1961). Además, cumple con el fin de promover el que los mismos se lleven a cabo de manera ágil y sencilla. López Vives v. Policía de Puerto Rico, 118 D.P.R. 219, 231 (1987); López Santos v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113 (1996).

No obstante lo anterior, se permite la adopción de los principios y/o normas fundamentales de las reglas procesales y de evidencia cuando éstas no son incompatibles con el procedimiento administrativo y sirvan para lograr una solución rápida, justa y económica de la controversia. Sección 3.13(e) de LPAU, 3 L.P.R.A. sec. 2163(e) ante; Industria Cortinera Inc. v. P.R.T.C., 132 D.P.R. 654, 660 (1993); Pérez Rodríguez v. P.R. Park Systems, Inc., 119 D.P.R. 634, 639-40 (1987); Berríos v. Comisión de Minería, 102 D.P.R. 228, 229-30 (1974). Del mismo modo, debe mantenerse presente que el norte de todo procedimiento adjudicativo, ya sea judicial o administrativo, es la búsqueda de la verdad y de la justicia para las partes. Pérez Rodríguez v. P.R. Park Systems, Inc., ante.

Cónsono con lo anterior, hemos expresado que las reglas de evidencia viabilizan ese propósito ya que el fin último de las mismas es el descubrimiento de la verdad en los procedimientos judiciales. J.R.T. v. Autoridad de Comunicaciones de Puerto Rico, 110 D.P.R. 879, 884 (1987). En el caso anteriormente citado manifestamos que la norma referente a la interpretación flexible de las reglas de evidencia es mucho más liberal cuando se trata de la aplicación del derecho probatorio a los procesos administrativos. *Ibid*. Enfatizamos, que en los procedimientos administrativos, como lo era en ese caso el proceso de arbitraje, debe prevalecer la flexibilidad y el carácter informal para que toda información pertinente a la controversia pueda llegar al conocimiento del juzgador de hechos. *Ibid*. De lo anteriormente expresado se puede afirmar que si bien en las vistas administrativas, de ordinario, no aplican las reglas o principios de evidencia, en aquellas ocasiones en que se utilicen las mismas se interpretarán con mayor liberalidad que en el escenario de un trámite judicial.

Por otro lado, y en relación con la Regla 63 de Evidencia, sobre declaraciones anteriores de testigos, es preciso recordar que la misma constituye una excepción a la regla de exclusión de prueba de referencia. 32 L.P.R.A. Ap. IV R. 63. Ésta dispone que toda declaración anterior de un testigo será admisible en evidencia siempre que el testigo esté presente en el juicio o vista, sujeto a ser

contrainterrogado en cuanto a la declaración anterior y siempre que dicha declaración fuese admisible de ser hecha por el declarante declarando como testigo. *Ibid*.

Hemos establecido firmemente que la admisibilidad de las declaraciones anteriores de un testigo que está ocupando la silla testifical, y sujeto a ser contrainterrogado, es una de las instancias en que menos se vulnera el derecho constitucional a la confrontación. Véase: Pueblo v. Esteves Rosado, 110 D.P.R. 334, 339 (1980); Pueblo v. De Jesús Ayuso, 119 D.P.R. 21, 31 (1987). Nuestra regla no exige la existencia de juramento, contrainterrogatorio y observación con respecto a la declaración anterior ya que se entiende que la oportunidad posterior de contrainterrogar y observar al testigo en la vista suple la ausencia de esos factores al momento en que se hizo la declaración. Pueblo v. Esteves Rosado, ante a la pág. 338.

Si bien antes de la aprobación de la Regla 63 las declaraciones anteriores de testigos sólo se admitían para fines de impugnación,[12] esa limitación ya no existe en nuestro ordenamiento jurídico. Siempre que se cumplan los requisitos de la Regla, una declaración anterior no sólo será admisible para impugnar y rehabilitar a un testigo sino también "como prueba sustantiva para fortalecer el

---

[12] Véase, Pueblo v. López Reyes, 109 D.P.R. 379 (1980); Cintrón v. A. Roig, Sucrs., 74 D.P.R. 1028 (1953); Pueblo v. Marchand Paz, 53 D.P.R. 671 (1938); Pueblo v. Pérez, 43

caso de la parte que presenta al testigo". E.L. Chiesa, Tratado de Derecho Probatorio, Tomo II, Publicaciones JTS, 2000, pág. 696. Véase, además, Pueblo v. Adorno Cabrera, 133 D.P.R. 839, 858-60 (1993); Pueblo v. Esteves Rosado, ante.

Del mismo modo, nuestra Regla 63 resulta ser más amplia que la Regla 801 (d)(1) federal de Evidencia de la cual procede pues admite, para probar la veracidad de lo aseverado en ella --a diferencia de la federal-- todo tipo de declaración anterior de un testigo, sin limitar tal admisión a determinada clase de declaraciones. Pueblo v. Esteves Rosado, ante a la pág. 340; Pueblo v. De Jesús Ayuso, ante a la pág. 31. A tales efectos, el Profesor Chiesa menciona, en su obra, que al amparo de la citada Regla puede ser admitida en evidencia cualquier tipo de declaración anterior, sea ésta similar o incompatible con el testimonio del testigo en corte, escrita u oral, formal o informal, bajo o sin juramento. Chiesa, ante a la pág. 696.

Asimismo, hemos reiterado, que el requisito de confrontación que exige nuestra Regla 63 se satisface si en el juicio o vista se le brinda a la otra parte la oportunidad de contrainterrogar al testigo con relación a la declaración que prestó previamente. Pueblo v. Stevenson Colón, 113 D.P.R. 634, 639 (1982). En este caso expresamos

---

D.P.R. 590 (1932); Pueblo v. Lafountaine, 43 D.P.R. 23 (1932).

que "lo crucial en relación con el derecho a la confrontación es que la defensa tenga la oportunidad de contrainterrogar". (Énfasis nuestro.) *Ibid*. a la pág. 639-40. Es decir, la declaración será admisible siempre que haya habido una oportunidad para contrainterrogar al testigo y que éste, a su vez, esté disponible para ser contrainterrogado por la parte adversa en el momento en que la declaración es ofrecida en evidencia.

Una vez admitida una declaración anterior de un testigo bajo la Regla 63, la función del juzgador consistirá en darle el valor probatorio que ésta amerite, confrontándola con las declaraciones del testigo en corte, con el comportamiento de éste en la silla testifical y tomando en cuenta las circunstancias en que ésta fue tomada. De este modo, adjudicará el asunto ante sí otorgándole a dicha declaración la credibilidad que merezca. Pueblo v. Adorno Cabrera, ante a la pág. 861; Pueblo v. Stevenson Colón, ante a la pág. 640.

### C.

Si aplicamos las normas de derecho reseñadas a la situación que hoy se nos plantea resulta claro que la declaración anterior del señor Feliciano fue correctamente admitida en evidencia en la vista administrativa ante la OEG. Como veremos, la declaración cumple con todos los requisitos establecidos bajo el palio de la Regla 63.

En primer lugar, se trata en efecto de una declaración anterior de un testigo. La misma le fue tomada al señor Feliciano por la representación legal de la OEG como parte del procedimiento investigativo efectuado con relación a la querella radicada contra la aquí peticionaria.

En segundo lugar, la declaración se ofreció en evidencia en una vista administrativa en la que el señor Feliciano compareció como testigo y en la que ya había testificado en interrogatorio directo respecto a los mismos hechos sobre los cuales versaba su declaración anterior. Más importante aun, el señor Feliciano estaba disponible para ser contrainterrogado, no sólo en relación con lo dicho en la vista, sino, también en torno a la declaración anterior.

El oficial examinador le brindó a la peticionaria la oportunidad de contrainterrogar al testigo con relación a su declaración anterior; ésta optó por no hacerlo y se limitó a contrainterrogarlo, exclusivamente, con respecto a lo que éste había declarado en el examen directo. En vista de ello, su alegación a los fines de que se violentó su derecho a la confrontación carece de méritos, pues teniendo la oportunidad de contrainterrogar al testigo sobre ello, optó por cruzarse de brazos.

Satisfechos los requisitos exigidos por la Regla 63 carece de méritos la contención de la peticionaria a los efectos de que la declaración anterior del señor Feliciano

no era admisible por no haber sido juramentada. Como vimos, una vez cumplidas las exigencias de la referida Regla la declaración anterior es admisible en evidencia sin importar su naturaleza, _forma_ o contenido. Tampoco nos persuade el argumento esgrimido por la peticionaria a los efectos de que la declaración anterior era inadmisible por ser ex-parte y porque "no tuvo los elementos de juicio necesarios para encausar el contrainterrogatorio". Surge de autos que desde la etapa del descubrimiento de prueba la parte peticionaria poseía copia de la transcripción de la declaración anterior del señor Feliciano, por lo que resulta obvio que siempre tuvo conocimiento sobre su existencia. Además, durante la vista administrativa en la que se ofreció como evidencia, la representación legal de la parte recurrida dio detalles sobre el contenido de la misma. Por tanto, forzoso es concluir que la peticionaria tuvo tiempo para familiarizarse con la referida declaración y, no cabe duda, de que tuvo a su alcance los elementos suficientes para efectuar un contrainterrogatorio.

Por las razones antes expuestas y considerando la liberalidad procesal que debe existir en los procedimientos administrativos, así como el loable fin de hallar la verdad que en éstos se impone, resolvemos que la declaración anterior del señor Feliciano fue _correctamente_ _admitida_ en evidencia. En vista de ello, _no_ se cometió el primer error señalado por la peticionaria.

III.

A.

Como segundo señalamiento de error la peticionaria plantea que el tribunal intermedio apelativo incidió al sostener las determinaciones de hechos a las que llegó la OEG. Alega que las mismas son arbitrarias, caprichosas, irrazonables y que no están apoyadas en suficiente evidencia sustancial que obre en el expediente administrativo. En particular, la peticionaria impugna aquellas determinaciones de hechos formuladas por la OEG que establecen que participó en un esquema de solicitación de fondos a agencias reglamentadas por la CSP.

Al evaluar la corrección de las determinaciones formuladas por la OEG debemos tener presente que la revisión judicial de las determinaciones de hechos de una agencia administrativa está limitada por lo establecido en la Sección 4.5 de la Ley de Procedimientos Administrativos Uniforme, 3 L.P.R.A. sec. 2175. Esta disposición de ley establece que las determinaciones de hechos formuladas por las agencias administrativas serán sostenidas por los tribunales si las mismas están apoyadas en evidencia sustancial que obre en el expediente administrativo. *Ibid.*

De este modo, se acogió legislativamente la norma jurisprudencial de que, de ordinario, los tribunales no intervendrán con las determinaciones de hecho de un organismo administrativo si las mismas están basadas en

suficiente evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Véase: Rivera Concepción v. A.R.P.E., res. el 29 de septiembre de 2000, 2000 TSPRA 143; Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Fac. C. Soc. Aplicadas v. C.E.S., 133 D.P.R. 521, 532 (1993). Henríquez v. C.E.S., 120 D.P.R. 194, 210 (1987). El fin primordial de esta norma es evitar que el criterio de la agencia administrativa en materia especializada sea sustituido por el criterio del tribunal revisor. Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131 (1998); Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 95 (1997).

Así pues, cuando una parte alega haber sido afectada por una determinación de hecho de una agencia tendrá que demostrar que en el expediente administrativo existe otra prueba que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta tal punto que no pueda concluirse que la determinación de la agencia fue razonable a la luz de la totalidad de la prueba que tuvo ante su consideración. Misión Ind. P.R. v. J.P., ante a la pág. 131; Metropolitana S.E. v. A.R.P.E., ante a la pág. 213; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 686 (1953). Si por el contrario, la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de la agencia deberán sostenerse por el tribunal revisor. Ramírez Rivera v. Departamento de Salud,

147 D.P.R. 901, 905 (1999); J.R.T. v. Escuela Coop. E.M. De Hostos, 107 D.P.R. 151, 156-57 (1978).

Es decir, las determinaciones de una agencia administrativa serán respetadas mientras la parte que las impugne no produzca suficiente evidencia para derrotarlas. Henríquez v. C.E.S., ante a la pág. 210. Ello, a su vez, responde a la presunción de regularidad y corrección que las mismas albergan. *Ibid*. Claro está, si la parte afectada le señala al tribunal revisor la prueba que menoscaba las determinaciones de hecho de la agencia, el tribunal debe proceder a examinar el expediente administrativo para evaluar si las conclusiones de hecho encuentran apoyo en evidencia sustancial que obre en el récord. Ramírez Rivera v. Departamento de Salud; ante a la pág. 906; Fac. C. Soc. Aplicadas v. C.E.S., ante a la pág.533.

Por otro lado, hemos reiterado que las determinaciones de los organismos administrativos merecen gran respeto y deferencia. Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Sin embargo, tal deferencia no aplica cuando la agencia actúa de forma arbitraria, ilegal, irrazonable o cuando la determinación no se sostiene por prueba sustancial existente en la totalidad del expediente. Reyes Salcedo v. Policía de P.R., ante a la pág. 94; Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 673-74 (1997); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947 (1993).

Cónsono con lo anterior, se ha justificado la intervención del tribunal con la discreción del juzgador en casos en que se demuestre ausencia de prueba adecuada o error manifiesto en su apreciación. Domínguez v. Caguas Expressway Motors Inc., res. el 24 de mayo de 1999, 99 TSPR 80. De este modo, no hemos vacilado en descartar las determinaciones de hechos de un organismo administrativo cuando éstas carecen de base sustancial en el récord. Chase Manhattan v. Emmanuelli Bauzá, 111 D.P.R. 708, 712 (1981); Sucn. A. Bernat v. Peñagarícano, Admor, 84 D.P.R. 526, 531-533 (1962). En síntesis, la norma de deferencia no es un dogma absoluto ni inflexible que impida, en todo caso, la alteración en las determinaciones de una agencia administrativa.

### B.

De un examen de la totalidad del expediente administrativo, surge con claridad que la conclusión de la OEG, en torno a que la peticionaria se involucró en un esquema de solicitación de fondos a empresas reglamentadas por la CSP, está sostenida por suficiente evidencia sustancial. Veamos.

La peticionaria alega que el expediente está carente de evidencia para sostener que ella formó parte de un esquema de solicitación de fondos; y, en particular, que exhortó directamente a los que asistieron al almuerzo a

que aportaran "lo más que pudieran" para la elaboración del suplemento informativo.

La conclusión de la OEG, a tales efectos, <u>surge claramente de la declaración anterior que le fue tomada al señor Feliciano durante el proceso investigativo de la querella que da lugar a este recurso.</u>[13] Como discutimos previamente, dicha declaración fue <u>correctamente admitida</u> como prueba en la vista administrativa celebrada ante la OEG bajo la Regla 63 de Evidencia. De este modo, la misma formó parte del récord administrativo que sirvió de base para las determinaciones de hecho formuladas por el oficial examinador. Así pues, obrando en el expediente dicha declaración --<u>de la cual razonablemente se desprende que la peticionaria se involucró en la práctica de solicitación de fondos exhortando a los presentes a que</u>

---

[13] En cuanto a este punto resultan pertinentes ciertas porciones de la transcripción de la declaración anterior del señor Feliciano. A preguntas del Sr. Julio A. Alicea, Analista del Área de Querellas de la OEG, con relación a la participación que tuvo la peticionaria en el almuerzo llevado a cabo el 16 de septiembre de 1997 y las aportaciones que se les solicitó que hicieran, el señor Feliciano manifestó:

> "... se nos indicó que había una compañía de promoción que estaba haciendo una recolecta y que cooperáramos en lo más posible con ellos." Declaración Jurada de Julio Feliciano, Petición de Certiorari, Apéndice 19, a la pág. 1482.

Más adelante, se inquirió al declarante acerca de la forma en que la peticionaria, en dicha reunión, presentó a la señora Shwaiki de Arta. En respuesta a dicha pregunta manifestó que la peticionaria la presentó:

ayudaran en lo más que pudieran-- no nos encontramos, como plantea la peticionaria, ante un récord huérfano de prueba que nos permita intervenir con la discreción de la agencia en sus determinaciones de hecho.

Por otro lado, la peticionaria argumenta que aún cuando entendiésemos que no estamos en una situación de ausencia total de prueba, la evidencia obrante en el expediente no es lo suficientemente sustancial como para sostener las determinaciones de hechos de la agencia. En apoyo de su contención la peticionaria hace referencia a los testimonios de los testigos que comparecieron a la vista administrativa de la OEG. Señala que ninguno de éstos manifestó que ella le hubiese solicitado a las empresas que asistieron a las reuniones que ayudaran, en lo más que pudieran, en la recaudación fondos.

La peticionaria sostiene que esa evidencia testifical demuestra que no estuvo involucrada en práctica alguna de solicitación de fondos; y que, por tanto, las determinaciones de hechos de la agencia, a tales efectos, son irrazonables y caprichosas al no estar apoyadas en prueba sustancial.

No estamos de acuerdo. Las determinaciones de la agencia están cimentadas en bases razonables. Éstas no sólo se apoyan en la declaración anterior a la que hemos hecho referencia, sino, además, en prueba incontrovertida

_____

"Como que era la compañía que iba ... a recaudar unos fondos, que le ayudáramos en lo más

y estipulada por las partes que obra en el expediente administrativo.

Un ejemplo de esto lo son las cartas suscritas por la peticionaria, como Presidenta de la CSP y bajo el sello de dicha agencia, invitando, en su mayoría, a personas sujetas a la jurisdicción reglamentaria de la CSP, para que asistieran a reuniones en donde se habló de la celebración del aniversario de la CSP, del suplemento informativo y de las aportaciones que se les pidió que hicieran. Además, el hecho incontrovertido de que la peticionaria asistió y fue anfitriona de dichas reuniones, donde se presentaron a las personas que se encargarían de la recaudación de las aportaciones económicas, es evidencia que refuerza la conclusión de la OEG a los efectos de que la peticionaria se involucró en un esquema de solicitación de fondos. Ello, debido a que la participación de ésta en dichas reuniones dio respaldo y carácter oficial a las estrategias y expresiones de las personas encargadas de la recolección de auspicios. En vista de lo anterior estimamos que las determinaciones de la agencia están apoyadas en bases racionales y en prueba sustancial.

Existiendo evidencia sustancial, que obra en el expediente administrativo, en apoyo de la conclusión de que la peticionaria se involucró en un esquema de solicitación de fondos a empresas por ella reglamentadas y

---

que pudiéramos." *Ibid*. a la pág. 1483.

en virtud del respeto que merece el peso que la agencia le otorgó a la prueba testifical que tuvo ante sí, <u>concluimos que dicha determinación de la agencia es razonable y en consecuencia la sostenemos</u>.

IV.

Sabido es que uno de los propósitos principales para la creación de la Ley de Ética Gubernamental fue promover y preservar la integridad de los servidores públicos y de las instituciones de nuestro gobierno. <u>O.E.G.</u> V. <u>Cordero Santiago</u>, res. el 21 de agosto de 2001, 2001 TSPR 118. De los informes conjuntos sometidos por la Cámara de Representantes, previos a la aprobación de esta pieza legislativa, surge que el fin de la misma, era entre otros, "prevenir, erradicar y penalizar cualquier comportamiento delictivo por cualquier funcionario gubernamental" que "vulner[e] los principios básicos de una ética por excelencia". Uno de los males que se intenta combatir, a través de esta ley, es el lucro que los funcionarios públicos puedan derivar del dinero del pueblo. Véase, Exposición de Motivos, 1985, Leyes de Puerto Rico, Núm. 12.

Del mismo modo, se desprende, tanto de los debates legislativos que anteceden esta ley como de su exposición de motivos, que el propósito de la misma es atacar y prevenir la corrupción del gobierno, la conducta ilegal de los empleados públicos, los conflictos de intereses, el

abuso de poder y el ejercicio de influencias indebidas. Esta ley se enfoca, además, en evitar no sólo la conducta impropia de los servidores públicos, sino también la apariencia de conducta impropia que éstos puedan exhibir.

A tono con dicho objetivo, tanto la Ley de Ética como su Reglamento, contienen disposiciones de carácter preventivo y profiláctico que prohíben situaciones con gran potencial de ocasionar efectos negativos a la imagen de integridad de los servidores públicos y de imparcialidad de los procesos gubernamentales. Es importante aclarar que el carácter preventivo de estas medidas radica en evitar lesiones mayores de la confianza pública prohibiendo conductas que de por sí son nocivas. Así se reconoció en el Artículo 2 del Reglamento de Ética al señalarse, como propósito, que:

> Es esencial que los funcionarios y empleados del servicio público mantengan principios del más alto grado de honestidad, integridad, imparcialidad y conducta para garantizar el debido funcionamiento de las instituciones gubernamentales y conservar la confianza de los ciudadanos en su gobierno. Evitar una conducta impropia y conflictos de intereses por parte de los servidores públicos es indispensable para mantener estos principios. ...[14]

### A.

Con estos pronunciamientos en mente procedemos a evaluar la corrección de las conclusiones de la OEG en torno a las alegadas infracciones cometidas por la aquí peticionaria. Esto lo hacemos no sin antes recordar el

alcance que tiene la revisión judicial de las conclusiones de derecho de un organismo administrativo.

Sabido es que las conclusiones de derecho de una agencia son "revisables en <u>todos</u> sus aspectos por el tribunal". (Énfasis nuestro.) Sec. 4.5, de la LPAU, ante; <u>Ramírez</u> v. <u>Departamento de Salud</u>, 147 D.P.R. 901, 907 (1999). Sin embargo, el criterio que debe aplicarse es si la decisión administrativa, <u>en interpretación de los reglamentos y las leyes que le incumbe implementar</u>, es una razonable. <u>Rivera Concepción</u> v. <u>A.R.P.E.</u>, res. el 29 de septiembre de 2000, 2000 TSPR 143.

Si bien, los tribunales le brindan mucha deferencia y respeto a las <u>interpretaciones</u> estatutarias efectuadas por el organismo facultado por ley para velar por su administración y cumplimiento, ello no constituye una norma inflexible que impida la revisión judicial si no existen las condiciones que sostienen tal deferencia. <u>Associated Insurance Agencies, Inc</u>. v. <u>Com. de Seguros de P.R.</u>, 144 D.P.R. 425, 436 (1997). Cónsono con lo anterior, hemos expresado que "la norma de dar <u>deferencia a la interpretación</u> que hace una agencia de la ley o reglamento que está bajo su administración es una de *hermenéutica*, que <u>de ningún modo afecta el *alcance* de la facultad de revisión de los tribunales</u>". (Énfasis nuestro.) <u>Com. Seguros P.R.</u> v. <u>Gen. Accident Ins. Co.</u>, 132 D.P.R. 543,

---

[14] Reglamento de Ética Gubernamental, Reglamento Núm. 4827 de 23 de noviembre de 1992, sec. 2.

553 (1993). Finalmente, no debemos olvidar que es a los tribunales y no a los organismos administrativos a quienes compete interpretar las leyes y la Constitución. <u>Colón</u> v. <u>Pesquera</u>, res. el 19 de abril de 2000, 2000 TSPR 60.

B.

Habiendo aclarado lo anterior, pasamos a considerar si la entonces Presidenta de la CSP, aquí peticionaria, incurrió en las violaciones éticas que le fueron imputadas. Al examinar los distintos cargos que se le atribuyen, <u>resolvemos que incurrió en la infracción de las Secciones 6(A) y 6(D) del Reglamento de Ética</u>. Veamos.

La Sección 6(A) del referido Reglamento, en lo aquí pertinente, dispone que:

Todo servidor público deberá:

(A)   Evitar tomar cualquier acción, esté o no específicamente prohibida por este Capítulo, <u>que pueda resultar en o crear la apariencia de</u>:

...
(4)   Perder su completa independencia o parcialidad.
...
(6)   Afectar adversamente la confianza del público en la integridad y honestidad de las instituciones gubernamentales.
...
(énfasis nuestro).

Por su parte, el Inciso (D) de la referida sección dispone, en lo pertinente, que todo servidor público deberá:

"Evitar incurrir en conducta criminal, infame o <u>lesiva al buen nombre de la agencia ejecutiva</u>

para la cual trabaja o al Gobierno de Puerto
Rico." (énfasis nuestro).

La OEG aduce que la peticionaria incurrió en la
violación de estas disposiciones reglamentarias ya que su
actuación al solicitar aportaciones económicas a empresas
reglamentadas por la CSP era una tendente a minar la
confianza, que tanto estas empresas como el público en
general, tienen en que dicha agencia será imparcial,
íntegra y honesta al fiscalizar y reglamentar a sus
concesionarios. Esto es, alega la OEG que tal actuación se
presta para pensar que los asuntos pendientes que estas
empresas pudieran tener ante dicha agencia,[15] así como el
grado de fiscalización que la misma ejerce sobre éstas,
podría verse afectado en la medida en que no aportaran
económicamente al suplemento o que la cantidad aportada
fuera menos de la esperada por la peticionaria.     A    los
fines  de  evaluar  los  méritos  de  esta  contención  es
menester expresarnos brevemente en torno a las funciones
de la CSP y su relación con las empresas que reglamenta.

El Artículo 14 de la Ley de Servicio Público, Núm.
109 de 28 de julio de 1962, según enmendada, 27 L.P.R.A.
sec. 1101, dispone, que como parte de sus poderes

---

[15] Resulta importante señalar que como parte de la
evidencia estipulada entre las partes, en la vista ante la
OEG se indicó que a la fecha de los hechos que dan lugar a
la controversia, Light Gas, Corp. tenía pendiente ante la
CSP un pleito referente a la renovación de su licencia
para operar. La misma estaba bajo la jurisdicción
reglamentaria de dicha agencia y fue una de las empresas a

generales, la CSP posee la facultad de <u>reglamentar y fiscalizar</u> a las compañías de servicio público. Específicamente, esta facultad incluye, entre otras, la <u>autoridad para establecer reglamentos</u> con el fin de regir y estructurar el funcionamiento de las compañías de servicio público, y así, <u>supervisar y controlar</u> las mismas. 27 L.P.R.A. sec. 1123; <u>Gallardo</u> v. <u>Clavell</u>, 131 D.P.R. 275, 283 (1992); <u>Rivera</u> v. <u>Lugo, Alcaide</u>, 53 D.P.R. 684, 698 (1938).

Del mismo modo, la CSP es la encargada de conceder autorizaciones, licencias y franquicias para la operación de estas empresas y, asimismo, <u>posee el poder de suspender tales operaciones en caso de que ocurra alguna infracción con las reglas por ella promulgadas</u>. 27 L.P.R.A. secs. 1110-1111. También establece normas para el tipo de servicio y equipo a ser utilizado por las compañías de servicio público, evalúa la razonabilidad de las tarifas de los porteadores y tiene la autoridad para modificar o fijar las mismas. 27 L.P.R.A. secs. 1103-1104. Sumado a las facultades previamente reseñadas, es preciso señalar que esta agencia gubernamental también ejerce los siguientes poderes sobre las compañías bajo su jurisdicción fiscalizadora: <u>impone multas y otras sanciones administrativas</u>; <u>conduce investigaciones e intervenciones</u>; les <u>exige cualquier clase de información</u>

---

las que se le solicitó que aportara dinero para la confección del suplemento informativo de la CSP.

que sea necesaria para el adecuado funcionamiento de las mismas y ordena o solicita a los tribunales que ordenen el cese de sus actividades o actos cuando así lo entiende necesario. 27 L.P.R.A. sec. 1101.

Un análisis de estas funciones nos revela el amplio poder de reglamentación y fiscalización que la CSP ejerce sobre las compañías bajo su jurisdicción. Vemos pues, que el bienestar de estas compañías depende en gran medida del aval y el visto bueno que dicha agencia le otorgue a sus operaciones. Considerando las facultades que tiene la CSP, no cabe duda de que la relación de poder creada entre ésta y las empresas que reglamenta, es una en que estas últimas fácilmente pueden sentirse obligadas a acceder o responder afirmativamente a cualquier reclamo de la primera; ello, con el fin de evitar que su negativa pueda repercutir en alguna determinación de la CSP que le resulte adversa a la operación de su negocio.

En virtud de esa dinámica particular que puede crearse entre agencia y compañía reglamentada es que resulta imperativo que, tanto la conducta de los funcionarios de la agencia fiscalizadora como la apariencia de la misma, sea una intachable. En esa medida se evita que ante los ojos de las empresas reglamentadas y los del público general puedan surgir dudas sobre la integridad, honestidad e imparcialidad de la agencia. No ser cauteloso en su comportamiento puede dar la impresión de que la agencia toma ventaja de su poder para ejercer

presión sobre las empresas bajo su jurisdicción y así obtener determinado objetivo. Tal cosa obraría en contra de la confianza que debe inspirar toda agencia gubernamental.

Ello fue precisamente lo ocurrido en el presente caso. Con el fin de publicar un suplemento informativo de la CSP como parte del aniversario de dicha agencia, la peticionaria, dirigió y respaldó una práctica de solicitación de aportaciones económicas a empresas que, en su mayoría, estaban bajo la fiscalización de la CSP. Las invitaciones a las reuniones que ésta les envió bajo su firma oficial y sello de la CSP, su presencia en las mismas y el hecho de que les presentó a las personas que se encargarían de darle seguimiento al recaudo de las aportaciones, definitivamente, otorgó carácter oficial y apoyo a todas las gestiones que, con relación a los auspicios, se llevaron a cabo.

En ese sentido, y tomando en cuenta lo dicho en torno al poder que tiene la CSP sobre las empresas que reglamenta, no es ilógico pensar que la insistencia de la señora Shwaiki --encargada de darle seguimiento a los auspicios-- en que aportaran la cantidad sugerida diera la impresión a dichas empresas que, de no satisfacer la misma, sus relaciones con la CSP podrían verse afectadas. Ello surge del propio testimonio de dos de los testigos que comparecieron ante la OEG, quienes representaban a dos

de las empresas reglamentadas por la CSP a las que le solicitaron aportaciones económicas.[16]

---

[16] A preguntas del Lcdo. Avilés acerca de cómo la negativa a cooperar económicamente para el suplemento podía afectar la relación entre Tropigas, Inc. y la CSP, la Sra. Wanda Marrero, manifestó:

"Bueno, porque eso..., yo pensé que se podía ver como que no queríamos cooperar en la actividad, ¿verdad?, y obviamente, como yo soy la que siempre voy a la Comisión, pues, me sentí que a lo mejor ellos pensarían que no queríamos cooperar por simplemente, pues, no cooperar. Y, y, y pensé que, que eso nos podía afectar en cuanto a..., pues a los permisos que uno radicó, que la fueran a coger, ¿verdad?, contra uno o algo. Y entonces, pues, me sentí incómoda porque, pues, yo estaba como que..., el jamón del "sandwich" como dicen, ¿ve?" (Énfasis nuestro.) Transcripción Oficial de la Vista Administrativa ante la OEG, Petición de Certiorari, Apéndice 21, a la pág. 1872.

Por su parte el testimonio del Sr. Julio Feliciano --presidente de Light Gas, Corp.-- durante el procedimiento investigativo de la querella fue el siguiente:

P- Y al usted decirle que no le podía dar esa cantidad, ¿qué procedió?
R- Ella me dijo que se lo iba a decir a la presidenta. Que yo no podía dar 10,000 dólares.
P- A la presidenta interina...
R- De la Comisión de Servicio Público.
...
P- ¿Y qué usted le indicó?
R- Que se lo dijera. Que yo no podía dar los 10,000 dólares, que se lo dijera.
...
R- Casi todos los días me llamaba. Hasta que transamos por 2,500.
...
P- ¿Y por qué usted los dio los 2,500?
R- Me sentí presionado. Sentí que si no los daba ... me podía causar un efecto adverso a mi empresa.
P- ¿En qué sentido?
R- En el sentido de más fiscalización, más ... yo estaba en proceso de renovación de mi licencia, etcétera, etcétera, etcétera." (Énfasis nuestro.) Declaración Jurada de Julio Feliciano, Petición de Certiorari, Apéndice 19, a las págs. 1489-91.

La solicitación de aportaciones económicas efectuada por una agencia fiscalizadora a las empresas que reglamenta es, a todas luces, un ejemplo del tipo de conducta que, aun de llevarse a cabo para un fin legítimo, no deja de crear dudas sobre el comportamiento ético de dicho organismo, razón por la cual la misma no se puede permitir.

Resolvemos, en consecuencia, que la práctica de una agencia fiscalizadora, de solicitar aportaciones económicas a personas y/o empresas que estén bajo su jurisdicción reglamentaria es una contraria a la ética; ello debido a que crea una situación de conflicto de intereses y, como dispone la Sección 6(A) del Reglamento de Ética, se presta para que el público pierda la confianza en la integridad, honestidad e imparcialidad de las instituciones gubernamentales. Resolvemos, además, que ello constituye una práctica que, claramente, lesiona la imagen y el buen nombre de la agencia administrativa para la cual trabaja el funcionario que incurrió en la misma. Ello en contravención a lo dispuesto en la Sección 6(D) del Reglamento de Ética.

En vista de lo anterior, resulta claro que la peticionaria violentó dichas disposiciones reglamentarias al dirigir la solicitación de fondos a empresas reglamentadas por la agencia que ella administra. De ningún modo podemos avalar el que esta funcionaria, por su conducta o por la apariencia de la misma, haya colocado a

las empresas reglamentadas por la CSP en posición de pensar que el trato justo, honesto e imparcial que esta agencia viene obligada a brindarles estaba condicionado a que éstas respondieran afirmativamente a la solicitación de fondos. En tiempos como estos donde la confianza en los organismos públicos y sus funcionarios ha decaído grandemente y los ojos del pueblo están puestos, constantemente, sobre la obra gubernamental debemos fomentar la conducta apropiada de los funcionarios públicos.

En virtud de ello, resolvemos que el tribunal intermedio apelativo actuó correctamente al sostener la conclusión de la OEG a los efectos de que la peticionaria incurrió en violación de las Secciones 6(A) y 6(D) del Reglamento de Ética.

No obstante lo anterior, no debemos olvidar que al evaluar la conducta de una persona a los fines de determinar si ha violado la Ley de Ética hay que tener presente el contexto y las circunstancias particulares en que ésta actuó, evitando así una aplicación automática de dicha ley. Véase: O.E.G. v. Cordero Santiago, ante. Asimismo, es preciso recordar que:

> Aunque nuestro país se ha visto en los últimos años sumergido en una ola de corrupción gubernamental que parece ahogarnos, no debemos permitir que en el afán de buscar soluciones inmediatas, desvirtuemos los propósitos de la Ley de Ética Gubernamental, convirtiéndola en un instrumento para cometer injusticias, dañar permanentemente la reputación de funcionarios públicos que han servido al país con dignidad,

honradez y dedicación, y desalentar el que las personas más capacitadas escojan dedicarse al servicio público. *Ibid.* (énfasis nuestro).

Se le imputó a la peticionaria haber violado el Artículo 3.2(a)[17] de la Ley de Ética; ello por alegadamente incurrir, a su vez, en la violación de la Sección 9 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico que dispone que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, ..." La OEG determinó que en la medida en que se utilizaron recursos públicos (el sello y papel timbrado de la CSP, el fax y los funcionarios de la CSP) para un fin privado, a saber, proporcionarle beneficio económico a Arta, la peticionaria violentó la referida disposición constitucional.

Somos del criterio que, si bien la peticionaria incurrió en una <u>práctica impropia</u> al solicitarle aportaciones económicas a empresas reglamentadas por la CSP, <u>no existe evidencia en el récord demostrativa de que la misma se llevara a cabo con el fin de beneficiar económicamente a Arta</u>.

Según se desprende del expediente administrativo, la celebración del 80<sup>mo</sup> Aniversario de la CSP fue un <u>evento de</u>

---

[17] Este Artículo reza de la siguiente manera: "Ningún funcionario o empleado público desacatará, ya sea personalmente o actuando como servidor público, las leyes en vigor ni las citaciones u órdenes de los Tribunales de Justicia, de la Rama Legislativa o de las agencias de la

gran envergadura para la CSP y el público en general, dado que dicha entidad es una de las agencias gubernamentales más antiguas del país. Como parte de esta celebración se realizaron diversas actividades dirigidas al público como lo fueron: la publicación y distribución de folletos informativos, conferencias, talleres educativos y exhibiciones. En las mismas se dio a conocer el impacto de las decisiones de la CSP en el desarrollo económico y social del país; y se educó al público en torno al desarrollo histórico de la CSP desde sus orígenes hasta el presente.

La confección y publicación del suplemento informativo fue sólo una de las estrategias implementadas hacia la consecución de un fin que consideramos válido y que constituye uno de los deberes ministeriales que tanto la CSP como toda agencia gubernamental debe cumplir; esto es, dar a conocer su historia, funciones, jurisdicción reglamentaria, las obligaciones de sus concesionarios, derechos de los usuarios y, más importante aún, cumplir con la obligación de mantener informado al pueblo.

En vista de ello, somos de la opinión que las gestiones realizadas por la peticionaria pueden ser consideradas como hechas <u>al amparo de la obligación que pesa sobre el Gobierno de informar a la ciudadanía sobre asuntos relativos a las funciones que realizan las</u>

---

Rama Ejecutiva que tengan autoridad para ello." 3 L.P.R.A. sec. 1822(a).

diversas agencias del país. Véase: P.P.D. v. Gobernador I,
139 D.P.R. 643, 680 (1995). Esto, a su vez, en obediencia
al principio reconocido de que "la expresión del Gobierno
de naturaleza educativa e informativa es indispensable
para que el pueblo pueda juzgar su labor y exigir remedios
a los agravios gubernamentales". *Ibid*.

De lo anterior se colige que el acto de comunicar y
educar al pueblo sobre la historia y servicios de la CSP,
mediante el suplemento informativo que fue publicado y
demás actividades relacionadas al aniversario de la CSP,
constituye un fin legítimo en beneficio del interés
público.[18] Siendo ello así, se justifica en el presente
caso, la utilización de recursos públicos como lo fueron
la colaboración de dos funcionarios de la CSP en la
coordinación de las actividades realizadas, el papel
timbrado y el "fax" de dicha agencia.

---

[18] Resulta claro que estamos ante una situación en donde se cumple con más de uno de los criterios establecidos jurisprudencialmente para determinar si una actuación gubernamental constituye un fin público que justifique la erogación de recursos públicos. Estos criterios son los siguientes: 1) que la actuación redunde en beneficio a la salud, seguridad, moral y bienestar general de todos los ciudadanos; 2) que esté destinada a una actividad de carácter público o semipúblico; 3) que promueva los intereses y objetivos de la entidad gubernamental; conforme a sus deberes, funciones o política pública establecida; 4) que promueva programas, servicios, oportunidades y derechos, o adelanta causas sociales, cívicas, culturales, económicas y deportivas; y 5) que promueva el establecimiento, modificación o cambio de una política pública gubernamental. P.P.D. v. Gobernador I, ante a la pág. 691.

La OEG argumenta, sin embargo, que el mero hecho de que Arta generara ganancias es suficiente para encontrar a la peticionaria incursa en la violación de la antes mencionada disposición constitucional.[19] No le asiste la razón.

Ciertamente Arta obtuvo ganancias con motivo de las actividades realizadas, más éstas se limitaron a los servicios que legítimamente prestó para la celebración del 80mo Aniversario de la CSP. Recordemos que Arta fue contratada por la Sra. Maitá Carbonell[20] para preparar el suplemento y con el fin de sufragar el mismo vendió anuncios recibiendo pagos de las empresas participantes.[21] Si bien la actividad y el suplemento fueron promovidos por una agencia pública, resulta claro que la ganancia que obtuvo Arta no provino de ésta, sino de los servicios profesionales que fueron prestados por dicha compañía, entiéndase la compra y venta de anuncios.

Vemos pues, que el beneficio económico que Arta derivó fue más bien incidental a las gestiones que para el

---

[19] Es importante señalar que esta contención no formó parte de las imputaciones contenidas en la Querella que inició el presente pleito.

[20] Adviértase que dicha compañía no fue contratada por la CSP.

[21] En ningún momento las partes han impugnado la validez de este contrato. Tampoco existe ley que prohíba la celebración de un convenio de esta naturaleza. Es por ello que el contrato celebrado entre la Sra. Maitá Carbonell y Arta es uno válido en virtud del Artículo 1207 del Código Civil, 31 L.P.R.A. sec. 3372 que establece que los

bienestar público llevó a cabo la CSP, por conducto de su Presidenta, con motivo de la celebración de su 80$^{mo}$ aniversario. Ello, a su vez, <u>no</u> representa a nuestro juicio una infracción de la Sección 9 del Artículo VI de nuestra Constitución ya que hemos establecido que "[u]na vez se determina que existe un <u>fin público</u> en relación con la erogación de fondos por una entidad gubernamental, el hecho de que surja un <u>beneficio incidental</u> a favor de personas particulares <u>no desvirtúa el fin público</u> a que va dirigida la actividad gubernamental." <u>P.P.D.</u> v. <u>Gobernador I</u>, ante a la pág. 687. (énfasis suplido).

De todo lo anterior, y en virtud de que en el expediente no existe evidencia de que hubo un esquema premeditado con el objetivo de proporcionarle beneficio económico a Arta, <u>resolvemos</u> que la peticionaria <u>no</u> violó la disposición constitucional antes señalada ni el Artículo 3.2(a) de la Ley de Ética. <u>Erró, por tanto el tribunal intermedio apelativo al confirmar la conclusión de la OEG, a tales efectos</u>.

Estrechamente relacionada a la imputación anterior se encuentran los cargos que le fueron formulados a la peticionaria bajo el Artículo 3.2(c) de la Ley de Ética y la Sección 11(A) de su Reglamento.

El Artículo 3.2(c) dispone que:

> Ningún funcionario o empleado público utilizará los deberes y facultades de su cargo ni la

---

contratos son válidos si sus cláusulas y condiciones no son contrarias a la ley, moral y el orden público.

propiedad o fondos públicos para obtener, directa o indirectamente para él, para algún miembro de su unidad familiar, ni para cualquier otra persona, negocio o entidad, ventajas, beneficios o privilegios que no estén permitidos por ley. 3 L.P.R.A. sec. 1822 (c).

Por su parte, la Sección 11(A) del Reglamento ordena que:

Ningún funcionario o empleado público solicitará o aceptará de persona alguna, directa o indirectamente, para él, para algún miembro de su unidad familiar o para cualquier otra persona, regalos, gratificaciones, favores, servicios, donativos, préstamos o cualquier otra cosa de valor monetario de una persona que: (1) Tenga o esté tratando de obtener relaciones contractuales, comerciales o financieras con su agencia. (2) Efectúe negocios o actividades que estén reglamentadas por su agencia. (3) Tenga intereses que puedan ser sustancialmente afectados por el cumplimiento o incumplimiento de sus deberes oficiales.

El objetivo que claramente se desprende de la lectura de estas dos disposiciones es evitar que el servicio público sea utilizado como fuente de lucro individual o mecanismo para proporcionarle beneficios y privilegios a terceras personas. <u>Refiriéndonos, en particular, al Artículo 3.2(c) notamos que requiere el cumplimiento de cuatro requisitos para que se configure una infracción al amparo del mismo</u>. Estos son: 1) que se trate de un funcionario o empleado público, 2) que éste haya utilizado sus deberes, facultades de su cargo, propiedad o fondos públicos, 3) con el <u>fin</u> de proporcionarse a sí mismo, a algún miembro de su familia o a otra persona, 4) alguna ventaja, beneficio o privilegio.

Por su parte, bajo la Sección 11(A) se configura una violación cuando: 1) un funcionario o empleado público, 2) solicita o acepta, directa o indirectamente, regalos, gratificaciones, favores, servicios, donativos, préstamos u cualquier otra cosa de valor monetario de las personas que se indican en los incisos (1), (2) y (3) de la disposición, 3) cuando tales beneficios los obtenga el funcionario para sí mismo, algún familiar suyo <u>u otra persona</u>.

La OEG aduce que la peticionaria violentó estas disposiciones en la medida en que le proporcionó ganancias a <u>otra persona</u> --Arta-- al solicitarle aportaciones a empresas que, en su mayoría, estaban bajo la jurisdicción reglamentaria de la CSP.

Como señalamos anteriormente, la peticionaria incurrió en una conducta a todas luces impropia al propiciar y avalar oficialmente un esquema de solicitación de aportaciones económicas a empresas que están bajo su poder fiscalizador. <u>Sin embargo, la prueba desfilada no demuestra que ésto se llevó a cabo con el propósito de proporcionarle beneficio económico a persona alguna, requisito indispensable para configurar una infracción bajo las disposiciones anteriormente citadas</u>.

De la evidencia obrante en el expediente administrativo, así como de las propias determinaciones de hecho formuladas por el oficial examinador, <u>surge que la peticionaria no obtuvo beneficio económico alguno en su</u>

carácter personal ni en su carácter oficial, como Presidenta y representante de la CSP. Nada se alegó en la querella, y tampoco se desprende del récord, que algún familiar de la peticionaria hubiese generado ganancias o beneficios de la solicitación efectuada por ésta.

Del mismo modo, tampoco es posible concluir, a base de la prueba presentada, que la solicitación se hubiese efectuado con el fin o propósito de beneficiar a un tercero, en este caso a Arta, como requiere el antes citado Artículo 3.2(c). Esto es, la CSP, a través de la peticionaria, no planificó las actividades del $80^{mo}$ Aniversario de dicha agencia ni publicó el suplemento para beneficiar económicamente a Arta. Tal contención no está sustentada en evidencia que obre en el expediente administrativo. Además, y como mencionamos previamente, la ganancia obtenida por Arta fue una incidental al objetivo principal de la actividad y del suplemento distribuido que fue el de educar e informar a la comunidad sobre las funciones de la CSP. Estos ingresos se produjeron por la compra y venta de anuncios, servicio para el cual ésta fue contratada.

En vista de que los requisitos para configurar una infracción bajo el Artículo 3.2(c) de la Ley y la Sección 11(A) del Reglamento no fueron satisfechos en su totalidad, resolvemos que la peticionaria no incurrió en los cargos imputados al amparo de éstos.

Finalmente, entendemos que el tribunal intermedio apelativo <u>erró</u> al confirmar a la OEG en su determinación a los efectos de que la actuación de la peticionaria violentó las Secciones 6(E) y 6(F) del Reglamento de Ética. Estas disposiciones establecen que "[t]odo servidor público deberá:

> "...
>
> (E) Evitar incurrir en prevaricación o conducta inmoral.
>
> (F) Evitar utilizar su posición oficial para fines político-partidistas o para otros fines no compatibles con el servicio público.
>
> ..."

Concluimos que la conducta de la peticionaria, al solicitar fondos a empresas y personas por ella reglamentadas, lesiona el buen nombre de la CSP y se presta para poner en duda la imparcialidad y honestidad de dicha agencia en su función fiscalizadora. Por tal razón, repetimos, la encontramos incursa en infracción de las secciones 6(A) y 6(D) del Reglamento. No obstante lo anterior, somos del criterio que la actuación de la peticionaria no llega a tal grado de constituir conducta inmoral, como tampoco se puede concluir que utilizó su posición para fines político-partidistas.

Al evaluar la conducta exhibida por la peticionaria no podemos perder de vista el aparente y alegado fin que la movió a actuar de la manera en que lo hizo: su propósito de aprovechar la celebración del $80^{mo}$ aniversario de la CSP para informar y educar al pueblo sobre la historia,

funciones, importancia y logros de dicha agencia. De este modo, la peticionaria estaba cumpliendo con el deber que tenía como funcionaria pública de informarle a la comunidad sobre todo lo que compete a la agencia que administraba. Si bien el mecanismo utilizado para adelantar este propósito, no fue el más adecuado, la interpretación que le demos a las disposiciones reglamentarias, a los fines de imponerle responsabilidad a la peticionaria no puede ser tal que inhiba o desaliente la iniciativa que otros funcionarios de gobierno puedan tener de informar y educar al pueblo.

En vista de ello, resolvemos que la actuación de la peticionaria, aun cuando no llegó a las proporciones de constituir una conducta infame o criminal, sí constituyó conducta lesiva a la agencia. Menos aun si consideramos que la actividad y el referido suplemento redundaron en beneficio para el interés público y para la propia agencia. Asimismo, el hecho de que la peticionaria no obtuvo lucro personal de las gestiones realizadas la aleja de lo que constituiría conducta criminal y conducta inmoral según definida por el Reglamento de Ética.[22]

---

[22] En la Sección 3(D) de este cuerpo reglamentario se define conducta inmoral como: "Toda conducta hostil al bienestar del público en general, inclusive aquella conducta que conflija con la rectitud o que es indicativa de corrupción, indecencia, depravación o actitud licenciosa; o conducta deliberada, flagrante y desvergonzada indicativa de indiferencia moral hacia la opinión de los miembros respetables de una comunidad; o la actitud desconsiderada con respecto al buen orden y al bienestar público."

Por otro lado, <u>no</u> existe <u>evidencia sustancial</u> demostrativa de que la peticionaria haya actuado con el fin de adelantar propósitos políticos o ideología partidista de tipo alguno. <u>Ello no fue originalmente alegado en la querella radicada en su contra</u>. El evento celebrado, así como el suplemento publicado, fueron dirigidos al público en general y no a un sector ideológico en particular; <u>además, en los mismos no se promocionó ni se hizo campaña a favor de partido alguno</u>. Más bien dichas actividades permitieron que personas de todos los sectores ideológicos conocieran de una agencia gubernamental cuyas funciones redundan en el beneficio común del país. En esa medida, la actuación de la peticionaria al organizar y promover estos eventos en nada demuestra que haya utilizado su cargo oficial para adelantar objetivos político-partidistas.

En virtud de ello, <u>concluimos que la peticionaria no violentó las Secciones 6(E) y 6(F) del Reglamento de Ética Gubernamental</u>.

V.

Lo resuelto anteriormente hace innecesario que nos expresemos en torno al cuarto error señalado. Ahora bien, a los fines de imponerle una sanción disciplinaria a la peticionaria por haber incurrido en infracción de las Secciones 6(A) y 6(D) del Reglamento de Ética <u>nos dejamos guiar por el criterio de la OEG</u>. Véase: <u>Associated Insurance Agencies, Inc.</u> v. <u>Com. de Seguros de P.R.</u>, ante

a las págs. 438-40. Esta agencia le había impuesto a la peticionaria una multa conjunta de tres mil dólares ($3,000) por violar las Secciones 6(A) y 6(D) del referido Reglamento.

No habiendo incurrido en la infracción de las demás disposiciones legales y reglamentarias que le fueron imputadas, limitamos la sanción impuesta a la cantidad señalada anteriormente.

VI.

Por los fundamentos antes expuestos procede confirmar la sentencia del Tribunal de Circuito de Apelaciones en cuanto determinó que la peticionaria incurrió en violación de las Secciones 6(A) y 6(D) del Reglamento de Ética. Con relación a lo demás, procede revocar y devolver el caso a dicho foro judicial para la continuación de los trámites de conformidad con nuestros pronunciamientos.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


**Oficina de Ética Gubernamental**

    **Querellante-recurrida**

        **vs.**                          **CC-2001-360**       **CERTIORARI**

**Nydia E. Rodríguez Martínez y otros**

    **Querellados-peticionarios**


**SENTENCIA**

**San Juan, Puerto Rico, a 1ro. de abril de 2003**


      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, en cuanto determinó que la peticionaria incurrió en violación de las Secciones 6(A) y 6(D) del Reglamento de Ética. Con relación a lo demás, se revoca y se devuelve el caso a dicho foro judicial para la continuación de los trámites de conformidad con nuestros pronunciamientos.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión concurrente y disidente. El Juez Asociado señor Rivera Pérez no intervino.


                    Patricia Otón Olivieri
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina de Ética Gubernamental

   Querellante-Recurrida

        vs.                                CC-2001-360      Certiorari

Nydia E. Rodríguez Martínez y
Otros

   Querellados-Peticionarios

**Opinión Concurrente y Disidente emitida por el JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI.**

San Juan, Puerto Rico, a 1ro de abril de 2003.

Concurro con el resultado al que llega la mayoría del Tribunal en el caso de autos en cuanto a que la Oficina de Ética Gubernamental (O.E.G.) correctamente determinó que la querellada incurrió en violaciones a las Secciones 6(A) y 6(D) del Reglamento de Ética Gubernamental. Disiento, sin embargo, en cuanto a la conclusión de la mayoría de que la O.E.G. erró al determinar que la querellada también violó la Sección 11(A) del Reglamento en cuestión.

En mi criterio la mayoría del Tribunal interpreta de un modo muy restrictivo el alcance de la referida Sec. 11(A). Veamos porqué es ello así.

En el caso de autos la querellada utilizó una compañía privada—-Arta Promotions Inc. (Arta)—-para levantar fondos para una actividad promocional de la Comisión de Servicio Público. La referida compañía constituía un negocio particular. Existía, pues, para producir lucro; y, en efecto, en el caso de autos, Arta obtuvo ganancias de más del 17% del total de los fondos que recaudó para la actividad promocional de la Comisión. Cuando la querellada instó a las personas reglamentadas por la Comisión a aportar lo más que pudieran a la campaña de recaudación de fondos para su actividad promocional, dicha querellada sabía sin duda alguna que las propias ganancias de Arta habrían de depender del monto de los fondos levantados. A más fondos, más ganancias para Arta. Así lo determinó expresamente el oficial examinador que intervino con el caso de autos a nivel administrativo y las partes estuvieron de acuerdo con tal determinación.

No obstante lo anterior, la mayoría del Tribunal estima que la querellada no violó la Sec. 11(A) del Reglamento de Etica Gubernamental. Ello a pesar de que conforme a su claro tenor literal dicha sección prohíbe precisamente lo que hizo la querellada en el caso de autos. La mayoría del Tribunal interpreta y aplica la referida Sec. 11(A) de tal modo que le añade restricciones a esa Sección, que ésta no contiene. Tal interpretación es contraria al reiterado principio de hermenéutica legal de que no deben los tribunales añadirle a una disposición legal limitaciones o restricciones que no

aparecen de su claro texto, Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966).

Existe otro asunto en la opinión de la mayoría que también me parece desacertado. En ésta se **resalta** que la campaña promocional llevada a cabo por la Comisión de Servicio Público en ocasión de la celebración de su 80mo. aniversario, constituyó **"un fin legítimo en beneficio del interés público"**. Por ende, la mayoría convalida los gastos incurridos en tal celebración. En varias ocasiones en su opinión la mayoría **enfatiza** la legitimidad como fin público de la celebración del referido aniversario y de los gastos correspondientes. No cabe duda que algunas agencias públicas tienen como costumbre gastar fondos públicos en celebrar con bombos y platillos tales ocasiones. Lo que no está tan claro es cómo ello beneficia realmente al interés público. Las más de las veces tales celebraciones son sólo una ocasión para resaltar las imágenes de los jerarcas de la agencia. No ocurre ninguna educación real o efectiva de la comunidad. En esta era tan aciaga de presupuestos insuficientes para atender las verdaderas necesidades del pueblo cabe preguntarse si este Foro debe darle un apoyo tan incondicional a una gestión promocional de carácter dispendioso como el que se le extiende a tales actividades en la opinión del Tribunal. El apoyo a una actitud más austera por parte de las agencias gubernamentales parecería ser una mejor forma de cumplir con nuestro rol.

La Oficina de Ética Gubernamental es uno de los instrumentos que tiene el país para combatir los actos

impropios que con frecuencia han estado ocurriendo en el servicio público de Puerto Rico, y para combatir la corrupción. Si bien debemos ser cautelosos en velar que no se castiguen injustamente a ninguno de los tantos buenos servidores públicos que tiene el país, también debe tener este Foro mucho cuidado en casos como el de autos para evitar amarrarle innecesariamente las manos a una entidad como la Oficina de Ética Gubernamental que ha estado ejerciendo sus importantísimas labores diligentemente.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO